CARTER *against* CHAMPION and others.

8   549
71   364

If a deed be attested, through mistake, by an incompetent witness, chancery will establish it as against the grantor.

Whether a creditor, having actual notice of a prior defective mortgage, may, or may not secure his debt, by an attachment on the same property ; such notice given to him *after* the attachment, and before the setting-off by execution, will have no effect.

A prior incumbrancer, who was present at the execution of a subsequent mortgage, and did not disclose his claim, will not, for that reason, be postponed, provided the second mortgagee had actual or constructive notice of the prior incumbrance.

*Middlesex,*
July, 1831.
———————
Carter
*v.*
Champion.

The recording of a deed of land, defective in a statute requisite, is not constructive notice of its existence to third persons.

And it makes no difference, in such case, whether the defect be, or be not, apparent on the face of the instrument.

Therefore, where an instrument was made and executed apparently according to the statute, but one of the two subscribing witnesses was the wife of the grantor; it was held, that such instrument was not a deed of land within the statute; consequently, was not required to be recorded; and the recording of it, therefore, was not constructive notice to third persons.

The lien of a creditor, acquired by the attachment of a particular piece of land, is as specific, and, under similar circumstances, stands on as high equitable ground, as a lien by mortgage of the same land.

On a bill of foreclosure, by a mortgagee against a levying creditor, the original debtor is a competent witness for the plaintiff.

THIS was a bill in chancery to correct a mistake in a mortgage deed and to obtain a decree of foreclosure, brought by *George Carter,* against *Epaphroditus Champion, William Carter* and others. The defendants were all defaulted, except *Champion,* who appeared and filed his answer.

On the 25th of *May,* 1829, *William Carter,* to secure the plaintiff for indorsing his note for 500 dollars, payable in four months, at the branch of the *United States Bank* in *Hartford,* mortgaged to him two pieces of land in *Killingworth.* The mortgage deed was duly executed and attested, in all respects, except that through inadvertence, accident and mistake, one of the two subscribing witnesses was *Hannah Carter,* the wife of *William Carter,* the mortgagor. When the note so indorsed came to maturity, *William Carter* failed to pay it, and it was paid by the plaintiff. On the 16th of *July* 1829, *William Carter,* being indebted to *Asa Rutty* in the sums of 1000 dollars and 100 dollars, mortgaged one of the same pieces of land to him, to secure these debts. Both these deeds were duly recorded.

In *July* 1829, the defendant *Champion,* having a debt against *William Carter,* and *Robert W. Chapman,* holding a note against him, then due, commenced suits on their respective claims, and attached the lands mortgaged to the plaintiff; and in *October* 1829, they obtained judgments. *Chapman* assigned his judgment to *Champion;* who, on the 30th of *March* 1830, had executions issued on both judgments levied on the mortgaged premises, which were duly set off on such executions. The debts of *Rutty* also were assigned to *Champion;*

who, on the 20th of *March* 1830, commenced suits thereon, attaching a part of the mortgaged premises. *Rutty* has since died ; and his executors, widow and heirs are made parties to the bill.

It did not appear, that when the attachments were levied, and the deed to *Rutty* executed, either *Champion*, or *Chapman* or *Rutty* had any actual knowledge of the deed to the plaintiff, but the constructive notice only arising from the record of that deed. But after the attachments and before the executions were levied, they were duly notified of the plaintiff's incumbrance.

The plaintiff witnessed and took the acknowledgment of the deed to *Rutty*, and knew its contents, and that it embraced the land mortgaged to him, and made no mention of his claim thereon.

The debts due from *William Carter* to *Champion*, in his own right and as the assignee of *Chapman* and *Rutty*, were prior in their origin to the plaintiff's debt.

At the hearing on the bill and answer, *William Carter* was offered as a witness, by the plaintiff. It was objected, that he was interested ; but he was admitted. *Edward Rutty*, one of the executors and heirs of *Asa Rutty*, was offered as a witness, by the defendant *Champion*. He was objected to, on the ground of interest ; but the court admitted him.

The case was reserved for the advice of this Court, on the questions as to the admissibility of *William Carter* and *Edward Rutty* as witnesses ; and whether the plaintiff was entitled to the relief sought.

*Barnes* and *Bolles*, for the plaintiff, contended, 1. That the plaintiff was entitled to a correction of the mistake in the execution of the deed. *Smith* v. *Chapman*, 4 *Conn. Rep.* 344. *Watson* v. *Wells*, 5 *Conn. Rep.* 468.

2. That the relief sought will be decreed against all the world with notice of the prior equitable lien ; and against the widow and heirs of the grantor, and also against creditors who have acquired a subsequent legal title, without notice. *McCall* v. *McCall*, 3 *Day*, 402. *Hinton* v. *Hinton*, 2 *Ves.* 632. *Bergh* v. *Francis*, 1 *Eq. Ca. Abr.* 320. *Finch* v. *Earl of Winchelsea*, 1 *P. Wms.* 277.

3. That the record of the mortgage deed from *William Carter* to the plaintiff, in the town-clerk's office, was constructive notice of its contents to all the world.

*Middlesex,*
July, 1831.

Carter
*v.*
Champion

*Middlesex,*
July, 1831.

Carter
*v.*
Champion.

In the first place, the law of constructive notice is founded on the principle, that the law imputes to a person the knowledge of a fact, of which the exercise of common prudence and ordinary diligence must have apprized him; and the record of a mortgage deed, defective as this was, will as soon and as efficaciously put a person on enquiry, as one complete and perfect in all respects. *Peters* v. *Goodrich*, 3 *Conn. Rep.* 146. *Wadsworth* v. *Wendell* & al. 5 *Johns. Rep.* 224.

Secondly, this instrument is such an one as the statute requires to be recorded. *Stat.* 302. *tit.* 56. *c.* 1. *s.* 9. It is a *deed;* strictly and technically so, having all the necessary incidents. *Co. Litt.* 35. It is also a *mortgage.*—The provisions of the registry acts have received a liberal and enlarged construction, both in this country and in *England. Johnson* & ux. v. *Stagg,* 2 *Johns. Rep.* 510. *Latouche* v. Lord *Dunsany,* 1 *Scho.* & *Lef.* 158.

Thirdly, this was, *upon the face of it,* an instrument completely within the common law definition and the statute requisites of a deed; and it could be assailed only by matter *in pais.* Must not the town-clerk record such an instrument, when offered? Is it reasonable to suppose, that in our registry act, the legislature intended such instruments only as a subsequent trial by jury, should demonstrate to be unexceptionable?

4. That the silence of the plaintiff respecting his prior deed, when he witnessed and took the acknowledgment of the *Rutty* mortgage, cannot weaken his equity. A mortgage registered, being notice to all the world, the mortgagee, by silence at a subsequent sale of the estate, forfeits no right. *James* v. *Morey,* 2 *Cowen* 312.

5. That the fact that the plaintiff's debt was subsequent in its origin to the debts due to *Champion,* gives him no superior equity. On the contrary, it conclusively shews, that he and his assignors trusted the *personal credit* of *William Carter;* and consequently, their title must yield to the equitable title of the plaintiff, who never gave a personal credit, but trusted to the *land.*

*Sherman* and *Waite,* contra, insisted, That the recording of a defective deed is not constructive notice to subsequent purchasers, mortgagees and levying creditors. Where there is no obligation to have an instrument recorded, the record of it conveys no notice; because no one is bound to search for an

instrument not required to be recorded. *Watson* v. *Wells,* 5 *Conn. Rep.* 473. 4 *Kent's Comm.* 168. *Latouche* v. Lord *Dusany,* 1 *Scho. & Lef.* 157. Lessee of *Heister* v. *Fortner,* 2 *Binn.* 40. *Hudson* v. *Butts,* 3 *Cranch* 140. *Frost* v. *Beekman,* 1 *Johns. Chan. Rep.* 300. All deeds are not required to be recorded ;—for a bond is a deed ;—but such deeds only as *convey the land ;* which, of course, are those, and those only, having the statute requisites. *Kendall* & al. v. *Wadsworth,* in err. 20 *Johns. Rep.* 663. If it be not such a deed, it is immaterial where the defect is.

2. That if the levying creditors, *Champion* and *Chapman,* had no knowledge of the defective deed to the plaintiff, at the time of levying their attachments, they might levy their executions and hold the property, although notice was given them prior to the levies. *Stanley* v. *Perley,* 5 *Greenl.* 369.

3. That upon the facts found, the plaintiff has no superior equity to the defendant. In relation to this point, the distinction between *actual* and *constructive* notice, is very material. It is *unconscientious* in a creditor having actual notice, to take his security, and therefore, he will be compelled to surrender it. This principle is not applicable where the creditor had constructive notice only. So far as *his conscience* is concerned, he stands on as high ground, as though there had been no notice whatever.—In this case, all the creditors meant to get security. The defendant succeeded ; the plaintiff failed. The defendant has equal equity ; and the law is with him. Why should equity interfere ?

4. That an attaching or levying creditor, with actual notice, does not stand on the ground of a second mortgagee. It is always conscientious for a creditor to endeavour to get his debt secured. But it is unconscientious and fraudulent in a mortgagor to give a second security to defeat a prior one ; and the second mortgagee with actual notice, combines with the mortgagor in the fraud. A creditor who comes to secure his debt by attachment, is chargeable with no combination ; he participates in no fraud. He has a perfect right to avail himself of a known defect in a prior security. As it respects his rights, it makes no difference whether the prior security was by mortgage or attachment ; and if the question were between two attaching creditors, one of whom had proceeded not according to law, and the other according to law, it would not admit of a doubt. This is the case supposed in principle.

**Middlesex,**
July, 1831.

Carter
*v.*
Champion.

*Middlesex,*
July, 1831.

Carter
*v.*
Champion.

5. That the plaintiff ought to be postponed, on the ground of the *suppressio veri,* when he witnessed and took the acknowledgment of the mortgage deed to *Rutty.*

6. That *William Carter* was not an admissible witness. He was interested in supporting the claim of the plaintiff; and that interest was not balanced. *Owen* v. *Mann,* 2 *Day* 473. *Barnwell* v. *Mitchell,* 3 *Conn. Rep.* 101. *Beach* v. *Swift,* 2 *Conn. Rep.* 299. *Townend* & al. v. *Downing,* 14 *East* 565. 2 *Stark. Ev.* 752.

WILLIAMS, J. The plaintiff asks to have this deed, which is defectively executed, established, as against the grantor and his creditors. The grantor does not object to this; and if he did, his objection could not avail him, as was adjudged in *Watson* & al. v. *Wells,* 5 *Conn. Rep.* 468. and *Smith* v. *Chapman* & al. 4 *Conn. Rep.* 344. But whether the plaintiff has the same right as against other mortgagees of the same property and attaching creditors, is the great question.

The rights of these various creditors are now concentrated in *Champion,* the defendant. His debts are older than the plaintiff's; but the plaintiff's, at the time it was contracted, was attempted to be secured on the land. Of this, however, these creditors had no actual knowledge, until after two of them had received a mortgage, and the others had attached.

On the part of the defendant, it has been contended, that if these creditors had had actual notice of the existence of this defective deed, yet as it is a mere scramble among creditors, all of whom are entitled to security, a court of chancery will not interfere, but leave them to adjust their legal rights.

In the case of *Priest* v. *Rice,* 1 *Pick.* 164. it was decided in *Massachusetts,* by a divided opinion, that a creditor, who knew of the existence of a deed of land, made by his debtor, could not secure it to pay his debt, although the deed was not registered. But in this case, no opinion is necessary as regards that point, because actual notice is not proved. Nor can the fact that actual notice was given to the attaching creditor, after his attachment, and before the setting-off by execution, have any effect; for the creditor, who had acquired a lien, by his attachment, could not be deprived of the effect of his lien, by a subsequent act of another person. The title was not indeed perfected, by the attachment, but the lien was; and if he could not, by a release deed, pass any interest in the

land, as no interest was in him, yet he acquired a right to complete a title, if he chose to pursue the steps pointed out by statute. This the defendant has done ; and to say that his right could be affected, by the subsequent act of a third person, would be to deprive the attachment law of its vitality. By such a construction, a creditor, who had fairly selected from the property of his debtor, when the security was ample, might, by a secret act of the debtor, before the attachment and notice by the creditor, afterwards be wholly deprived of the benefit of his security, when it had become too late to obtain any other. Such a construction is opposed to principle, and the only authority which has been produced upon the point. *Stanley* v. *Perley*, 5 *Greenl.* 399.

It was also claimed, on the part of the defendant, that *Rutty* was taking a deed of this land, which was known to the plaintiff, and yet the plaintiff did not disclose his own claim, and must therefore be postponed. As to this, it is enough to remark, that if the registering of the plaintiff's deed was in law constructive notice to all the world of its existence, or even to the defendant, or those under whom he claims, *Carter* was not bound to give notice of a fact, which the defendant and those under whom he claims, was otherwise bound to notice. *Carter* might fairly suppose *Rutty* knew what the law implies that he knew. But if, on the other hand, there is no implication of notice, by the recording of the deed, then it is not necessary to go into the question as to the effect of *Carter's* silence. The question then comes to this ; is the registering of a defective deed constructive notice so as to bind third persons?

Here it is to be remarked, that the registering of a deed is a legislative regulation, founded indeed upon the best principles of policy, for the security of titles, but still depending for its effect upon the true construction of the statute. Our statute has prescribed the manner in which deeds of land shall be executed : that they shall be attested by two witnesses ; acknowledged before a magistrate ; and, to make them effectual against third persons, shall be recorded. The deed to be recorded, then, is the deed spoken of in the statute ; that is, a deed executed according to the statute ; not the instrument merely, which the common law would denominate a deed, but the instrument, which has the statute requisites to give it validity as a deed ; because no other instruments are recognized as grants and deeds of " houses and lands ;" the statute being

*Middlesex,*
July, 1831.

Carter
*v.*
Champion.

*Middlesex,*
July, 1831.

Carter
*v.*
Champion.

express, that no grant or deed of land shall be valid, unless written, subscribed, witnessed and acknowledged as aforesaid.

In one case only, a provision is made for a deed not completed according to the requisites of the statute; and that is, where the grantor refuses to make an acknowledgment. Then, in conformity to a similar provision in the civil law, the grantee may leave a copy of his deed with a claim of title, with the register, which secures his title until a legal trial has been had. This exception shews, that in all other cases, the deeds completed in the manner required by the statute, were intended. That this is not a deed of that character, the whole object of the bill shews.

Is the recording, then, of such an instrument of any effect? It may, indeed, be evidence tending to prove *actual* notice; but when the fact of actual notice is negated, as it is in this case, can the record have any effect upon third persons? Now, if this be a rule of policy, adopted by the legislature, the court is not to extend it to cases not within its provisions; and should it be extended to the case on trial, I know not where we are to stop, or what line to draw. If it be said, that no prudent man will stop without looking at the record, that may be said as truly in any other case as in this, and would be equally applicable to any other defect. But in point of fact, we know purchases are often made, where from the distance of the record, or a reliance upon the integrity of the grantor, no such examination is made. And although this is no excuse for a party, where his case is within the act, yet it may have been the reason why the legislature did not extend the provisions of the act to cases of this kind. But whatever may have been their reasons, it is sufficient for me, that they have not done so.

It was claimed, on the part of the plaintiff, that Lord *Redesdale*, in his construction of the *English* statute, had decided, that all deeds and conveyances—whether actual legal conveyances or not—whereby any lands may be affected, are within the view of the legislature. Now, if this were so, perhaps it would be a sufficient answer, that our statute speaks of grants and deeds of bargain and sale and mortgages, and of no other conveyances. But it is believed, that the *English* authorities are uniform on the subject. In *Morecock* v. *Dickins* & al. *Ambl.* 678. it is said, that the registering of an *equitable* mortgage in *Middlesex*, is not presumptive notice, of itself, to a subsequent legal mortgagee, so as to take from him

his legal advantage. See also *Wrightson* & al. v. *Hudson* &
al. 3 *Eq Ca. Abr.* 609. *pl.* 7. And in *Underwood* v. Lord
*Courtown,* 2 *Sch. & Lef.* 64. the same Chancellor above cited
says: " It is contended, that the deed operated as a contract;
that being registered, it bound the title to the land, according
to the terms of that contract; and that every subsequent pur-
chaser must be a purchaser with notice. It seems to me,
that nothing could be more mischievous than to hold, that the
putting of any*thing on the registry, is notice, within the mean-
ing of the word notice, as applied to courts of equity in such
cases." This is sufficient to shew, that Lord *Redesdale* did
not mean, in the former case, what the plaintiff supposed; or
if he did, that he was soon after satisfied, that he was incor-
rect.

The case of *Wendell* v. *Wadsworth,* in err. 20 *Johns. Rep.*
559. was cited in support of the plaintiff's claim. There was
a conveyance of a soldier's right, but without deed, deposited
in the office of the county clerk; and the question was, wheth-
er a deposite of a deed *not sealed,* was within the statute. The
deed contained not only a transfer of the land, but a covenant
for further assurance; and the act required " all deeds and
*conveyances,* made and executed, or *pretended* so to be, of and
concerning, or whereby any of the said lands might be any
way affected in law or equity, to be deposited." In this case,
the Chancellor held, that the words of the statute were com-
prehensive enough to embrace the plaintiff's case, reaching
every instrument affecting the lands *in law or equity;* and
that the deposite operated as notice would under the registry
act. This decision was reversed in the court of errors, on the
ground that the statute was not intended, like the registry acts,
to affect third persons with notice, but merely to permit those
*inclined,* to inspect. But *Spencer,* J., in giving the opinion of
the court, says: " It would seem to me, that deeds and con-
veyances mean the same thing; that they are used as synon-
ymous expressions; and that therefore, no *paper,* which was
not *a deed,* and did not convey the land from the grantor to
the grantee, was within the words of the statute, or its mean-
ing and intent." 20 *Johns. Rep.* 663. And in *Frost* & al. v.
*Beekman,* 1 *Johns. Chan. Rep.* 288. 300. Chancellor *Kent*
says: " The question how far the unauthorized registry of a
mortgage would charge a purchaser with notice of the mort-
gage, does not necessarily arise. The better opinion in the

*Middlesex,* books seems to be, that it would not be notice." And in a
July, 1831. more recent case before the court of errors, upon an assign-

Carter    ment of a mortgage, *Sutherland,* J. said there was no law re-
*v.*    quiring the recording of it. " If he [the appellant in that case]
Champion. had caused it to be recorded, it would have been a voluntary,
and inefficacious act. In judgment of law, it would have been
notice to no one."—" No presumption can be indulged, that if
the assignment had been recorded, the respondent would have
become apprized of the fact." *James* v. *Morey* in err. 2 *Cow-
en,* 246. 296. And in the case of *Lessee of Heister* v. *Fortner,*
2 *Binn.* 40. it was explicitly decided, that a deed registered,
which was defectively acknowledged, was not constructive
notice to a subsequent purchaser. Add to these the recent
opinion of Chancellor *Kent,* in his *Commentaries,* who declares
the authorities to be uniform on the subject, except in the
state of *Louisiana,* which, no doubt, is founded on the princi-
ples of the civil law rather than of the common law. 4 *Kent's
Comm.* 167, 8.

It would seem as if these authorities were sufficient evidence
of the law, unless cases in this state are to be found, in which
they are denied or doubted. The only case within my recol-
lection, is that of *Watson* & al. v. *Wells,* 5 *Conn. Rep.* 468.
473. where the question was discussed, and not decided.
The Chief Justice says: " I am inclined to think, that there
was no constructive notice arising from the plaintiff's deed, to
which there was only one witness; and that from the record
of a deed, which is not complete according to law, and which
therefore conveys nothing, there is no presumption of notice.
On this subject, however, I would be considered as giving no
opinion."

As a general rule, then, I must think, that there is no doubt,
that the recording of an instrument so defective, that it can-
not pass title by our law, cannot be considered constructive
notice of the existence of such instrument.

It was claimed, however, that where the instrument appear-
ed on its face to be a good one, it would be the duty of the
clerk to record it; and therefore, it ought to be available. It
might, indeed, in such case, be prudent for the clerk to record
the deed, and to leave the question of its validity to be decided
by the court; and yet it is difficult for me to comprehend how
a deed, which is void for want of two witnesses, acquires any
additional validity, because it seemed to have two. It may

be more difficult to discover the defect ; but when discovered, *Middlesex,*
the conveyance must be the same in one case as in the other. July, 1831.
A forged deed, or a deed with a forged acknowledgment, or an ────
acknowledgment before a man who claimed to be a justice, but Carter
was not, might appear valid ; and it might be proper for a *v*
clerk to enter such deed upon record, he not being a judge, Champion.
but a mere ministerial officer ; but when recorded, it would
convey no more title, nor be any more evidence of a contract
to convey the land, than if the deed had but one witness.
And it would seem very strange to say, that if unfortunately a
person takes a deed, and has but one witness, and has it re-
corded, it shall not be constructive notice ; and yet if that
same person, discovering the defect before he gives it to the
clerk for record, adds the name of a second witness, and then
causes it to be recorded, this deed should be constructive no-
tice. Such a distinction cannot exist ; and as there is no proof
of actual knowledge of the existence of *Carter's* deed in the
defendant, and as both plaintiff and defendant are *bona fide*
creditors of *William Carter*, and both have attempted to se-
cure their debts, by the same property, I see no reason why
they should not be left to their legal rights, according to the
maxim, that where two have equal equity, he who has the le-
gal right shall prevail, and the maxim— *Qui prior est tempore,*
*potior est jure.* *Berry* v. *Mutual Insurance Company*, 2
*Johns. Chan. Rep.* 608.

It was suggested, that the parties did not stand upon the same
equitable ground ; as the plaintiff trusted his money upon the
credit of the land in question ; and it is said, that in *England,*
a judgment creditor does not stand upon the same ground as
a mortgagee. A judgment is considered there only a general
security, not a special lien on the land. *Finch* & al. v. *Earl*
*of Winchelsea*, 1 *P. Wms.* 279. Here that part only of the
real estate, which has been attached, is bound ; and I see no
reason why the lien acquired, by attaching a particular piece
of land, should not be considered as much a specific lien, as if
acquired by the voluntary act of the debtor. I do not enquire
whose was the oldest debt, but whose is the oldest legal lien,
fairly acquired ? In this case, *Champion* has that lien. His
legal title is complete ; and so far as appears, his legal lien was
obtained without any knowledge of the plaintiff's claim. I see,
then, no reason why, as between these *bona fide* creditors, a
court of equity should disturb them in the enjoyment of their
legal rights.

*Middlesex,*
*July, 1831.*

Carter
*v.*
Champion.

As to the interest of *William Carter*, the witness, I can see none. He must pay both debts; and whether this land pays the plaintiff's debt, or the defendant's, must be indifferent to him. I think his interest is balanced; but if any exists, it is too remote and contingent to prevent his being a witness.

Still less ground of objection do I see to the testimony of *Rutty.* He can have no possible interest; and the fact that he was named a defendant in the bill, was not, and under the circumstances of this case, could not be, any solid ground of objection to the witness.

I would, therefore, advise the superior court, that the witnesses *Carter* and *Rutty* were properly admitted; and that the plaintiff is entitled to no relief as against the defendant *Champion*, but ought to have a decree in his favour as against *William Carter.*

The other Judges were of the same opinion.

Decree for defendant *Champion;*
Against defendant *Carter.*