*Windham,*
July, 1840.

NANCY SUMNER, administratrix of AZEL SUMNER, deceased, *against* RHODES and others.

Sumner
*v.*
Rhodes.

Where *A* and others, being jointly indebted to *B*, gave him their joint note, and mortgaged lands to secure the payment thereof, after which *A* paid to *B* the amount due on such note, and took from him an assignment of it and of all *B's* interest in the mortgaged premises; it was held, that the purchase of the mortgage by *A* operated as payment only of his share of the debt; and that for the balance, he, or his assignee, was entitled to a decree of foreclosure against his co-mortgagors, or their assignees of the equity of redemption.

If *A* sells and conveys lands to *B*, upon his agreement to give *A* a note and a mortgage of the same lands; and *B* gives a mortgage deed imperfectly executed; *B* may resort to a court of equity, and have his title perfected.

And in such case, *B* is entitled to this relief, not only against *A*, who made the agreement, but against all subsequent purchasers having actual knowledge of *B's* equitable title.

The record of a valid deed is constructive notice of the state of the title created by that deed, but it is not actual notice.

The record of a deed defective in a statute requisite, is not constructive notice.

Before a party having the legal title, can be postponed to one claiming a prior equitable title under a defective deed, it must appear that the former had actual notice of such equitable title.

THIS was a bill in chancery for a confirmation of title, and for a foreclosure.

In *January*, 1828, *Silas Smith* and *Samuel E. Joy*, being the owners of three lots of land in *Thompson*, sold and conveyed them to *James Cunningham, Thomas Dike, Augustus Howe, Jacob Levins, John Chollar, Jude Sabin, James Dike* and *Erastus Buck.* These grantees, who had constituted themselves a company for manufacturing purposes, agreed to give, for a part of the purchase money, one note to *Smith* and another to *Joy*, and to secure the payment of them, by a mortgage of the lands purchased. The note to *Joy* was given, and subsequently paid. The note to *Smith* was signed by all the members of the company, except *Chollar.* The mortgage deed was duly executed by two only of the company. *Chollar* did not sign it. The remaining five signed it, but did not acknowledge it; and their execution was attested by only one subscribing witness. The note and mortgage deed were then delivered to *Smith*, who, by mistake, received the deed as one duly executed by all the company, except *Chollar*, and carried it to the town-clerk to be recorded. The titles of the several defendants were derived from the members of

<div style="float: left;">
*Windham,*
July, 1840.

Sumner
*v.*
Rhodes.
</div>

the company, by conveyances made subsequently to the delivery of the mortgage deed; and they all had notice of *Smith's* equitable title, at the times of taking their respective conveyances, except *Rhodes* and *Hicks*, who had no notice, unless the record of the mortgage deed was constructive notice to them. Some time after the delivery of the note and mortgage, *Cunningham* paid to *Smith* the balance due to him upon his note, and took from *Smith* and *Joy* an assignment of the note, and of all their interest in the mortgaged premises; and afterwards assigned them to *Azel Sumner*, who commenced the present suit, but having died during its pendency, it is now prosecuted by the plaintiff, as administratrix upon his estate.

The case, embracing these facts, (with others, which it is not necessary for the present purpose to state,) was reserved for the consideration and advice of this court.

*Strong*, for the plaintiff, after remarking, that the plaintiff, being the holder, by assignment, of the note to secure which the mortgage in question was given, is entitled to the relief sought, unless some of the objections urged by the defendants ought to prevail, contended, 1. That the want of a due attestation and acknowledgment of the deed, did not preclude the plaintiff from such relief. In the first place, as between the original parties, these defects will not, in a court of equity, deprive the mortgagee of the benefit of the security. It was agreed to be given, and supposed to have been given. A court of equity will consider that as done, which was agreed to be done. 1 *Story's Eq.* 179. Secondly, subsequent purchasers *with notice*, stand in the same situation as those from whom they purchase. 2 *Sug.* 254. 307. 301. 1 *Story's Eq.* 383. Thirdly, this is true where the prior interest of which the subsequent purchaser has notice, is but an equitable one. 1 *Story's Eq.* 384, 5. *Coote's Mort.* 378. Fourthly, it makes no difference, with reference to this matter, whether the notice to subsequent purchasers, be actual or constructive. 1 *Story's Eq.* 387. 2 *Sug. Vend.* 340. Fifthly, what is sufficient to put a party on inquiry, is sufficient to constitute notice. *Shaw* & al. v. *Poor*, 6 *Pick.* 86. *Pidge* v. *Tyler* & al. 4 *Mass. Rep.* 541. 2 *Sug. Vend.* 335. *Booth* & al. v. *Barnum* & al. 9 *Conn. Rep.* 286. *Peters* & al. v. *Goodrich*, 3

*Conn. Rep.* 146. *Sigourney* v. *Munn* & al. 7 *Conn. Rep.*
324. *Bolles* v. *Chauncey* & al. 8 *Conn. Rep.* 389.

2. That the mortgage debt was not paid, by the assign-
ment to *Cunningham.* First, the fact is not so found. Sec-
ondly, it was not so *designed* by the party. The object was
an assignment of the mortgage security. Thirdly, courts of
equity will look to the real object of the transaction ; and
will not, except from necessity, give a construction to a find-
ing that will defeat that object.

3. That the conveyance by *Cunningham* to *Sumner* was
valid. First, it is not found to be fraudulent, but the reverse
appears. Secondly, if it were so, *creditors* only could avoid
it. [The counsel proceeded to anticipate and reply to other
objections, which were not much insisted on, by the opposing
counsel, nor taken into consideration, by the court, in their
decision.]

*Child* and *Backus,* for the defendants, contended, 1. That
the plaintiff, as assignee of *Cunningham,* had no equitable
claim. First, there was gross negligence on his part. *Smith*
and *Joy* knew the facts ; much more so did *Cunningham.*
Secondly, the note was *paid* by *Cunningham.* Thirdly,
there was not a *bona fide* transfer of the note to *Sumner,* the
plaintiff's intestate. He paid nothing. This is a contrivance
between him and *Cunningham* to throw the debt upon the
other parties. As against *purchasers, Cunningham* has no
right to set up the deed.

2. That at any rate, the plaintiff, as against *Hicks* and
*Rhodes,* was not entitled to relief. They are *bona fide* mort-
gagees and purchasers, *without notice.* They had no actual
notice ; and the registry of the *defective* deed was not con-
structive notice to subsequent purchasers. *Carter* v. *Cham-
pion* & al. 8 *Conn. Rep.* 549. *Watson* & al. v. *Wells,* 5
*Conn. Rep.* 468.

3. That the want of acknowledgment rendered the instru-
ment not merely defective, but *void,* as a deed. *Pendleton*
v. *Button,* 3 *Conn. Rep.* 406. *Stanton* v. *Button,* 2 *Conn.
Rep.* 527. *Hayden* & al. v. *Westcott,* 11 *Conn. Rep.* 527.
[Some other objections were suggested, which it is not neces-
sary to state.]

*Windham,*
July, 1840.

Sumner
*v.*
Rhodes.

*Windham,*
July, 1840.
———
Sumner
*v.*
Rhodes.

WAITE, J.   The question arising upon these facts in the case, and upon which our opinion is asked, is, what are the equitable rights of the plaintiff against the other defendants.

It is very evident, that if each member of the company had given to *Smith* a separate note for his part of the debt due to him, and secured the payment by a separate mortgage of his interest in the lands, *Cunningham* might have paid his own debt, purchased of *Smith* the other mortgages, and sustained a bill for a foreclosure against each mortgagor. And had they all united in a joint note and mortgage, their equitable rights, as among themselves, would remain the same. It would have been the duty of each one to pay his portion of the debt; and his interest in the lands would in equity be considered as pledged for the payment of his share.

*Smith* indeed might have sued all, and collected his debt of either, and might have retained his lien upon all the lands mortgaged until his whole debt was paid. And had he compelled *Cunningham* to pay the whole debt, *Cunningham* would in equity have been entitled to the benefit of the mortgage given by the other members of the company, for the security of their respective shares. So, if he has purchased of *Smith* the mortgage, and taken an assignment to himself, that part of the debt which it belonged to him to pay, must be considered as paid, and as to the balance, he may be considered in equity as the assignee of *Smith*, and become entitled to hold the respective shares of the other mortgagors until their portions of the debt are paid. And we see no difficulty in his sustaining a bill for a foreclosure against them, or their assignees of the equity of redemption.

The plaintiff in the present case stands in the same situation as *Cunningham* did, and is entitled to the same relief that he would have been entitled to, had no assignment been made by him.

But the mortgage deed in this case has not been duly executed, by all those persons who had agreed to do it. Now, it is perfectly well settled, by repeated decisions, that if *Smith* had sold his lands to the members of the company, upon their agreement to give him a note and mortgage deed of the same land, duly executed by them, and they had given him a deed imperfectly executed, he might resort to a court of chancery and have his title perfected. *Carter* v. *Champion* & al. 8

*Conn. Rep.* 549.   *Watson* & al. v. *Wells,* 5 *Conn. Rep.* 468. *Smith* v. *Chapman,* 4 *Conn. Rep.* 344.

And he is entitled to this relief, not only against the members of the company who make the agreement, but against all subsequent purchasers having actual knowledge of his equitable title.   They take the lands subject not only to all legal incumbrances upon them, but to all equitable incumbrances of which they have notice.

The committee in this case has found, that two of the defendants had no notice of *Smith's* equitable title, unless the record is constructive notice to them.

Our law makes the record of a valid deed *constructive* notice of the state of the title created by that deed, but not *actual* notice.

In a recent case, this court held that the recording of a deed, defective in consequence of having but one legal witness, was not constructive notice of such instrument.   *Carter* v. *Champion* & al. 8 *Conn. Rep.* 549.   If, therefore, each member of this company had given *Smith* a separate mortgage deed of his interest in the lands to secure the note, and a part of these deeds had been duly executed, and the others but imperfectly, so as to pass no legal title, the record of the former would be constructive notice to subsequent purchasers ; but, upon the authority of the case just cited, the record of the others would not have that effect.   In our opinion, the same effect is produced, by the parties uniting in the same deed.   So far as the deed is valid, the record operates as affording notice, but has no effect beyond that.

If indeed it had appeared, that the two defendants had *actual* notice of the contents of the deed, as recorded, the case would be different.   Whether a purchaser has, or has not, actual notice of the contents of a prior deed properly executed and duly recorded, the effect is the same.   The policy of our law makes the record sufficient notice.   But the case is otherwise when the deed is defective.   Before his legal title can be postponed to a prior equitable title, it must appear that he had actual notice of such equity.

Our opinion, therefore, is, that the purchase of the mortgage by *Cunningham* operates as payment only of his share of the debt, being one eighth part ; and that for 'the balance the plaintiff is entitled to a foreclosure: that she is entitled to

*Windham.*
July, 1840.

Sumner
*v.*
Rhodes.

have *Smith's* equitable title perfected as against all the defendants, who had actual notice of it, at the time of taking their respective conveyances; but that the record of his deed is not constructive notice of the mere equitable title.

In this opinion the other Judges concurred.

Decree for plaintiff.

---

## REGULÆ GENERALES.

### PASSED IN 1841.

1. The rule of this court passed in 1806, requiring that in every writ of error there shall be a special assignment of errors, is extended and shall apply to writs of error brought to the superior court. In every such assignment of errors, in either court, the precise matter of error or defect in the proceedings of the court below, involved in such assignment, on which the plaintiff in error relies, shall be particularly pointed out, set forth and expressed; and the court will consider no other.

2. In any action by any corporation, foreign or domestic, founded on any contract, expressed or implied, the defendant shall not, under the plea of the general issue, be permitted to dispute, but shall be deemed to admit, the capacity of the plaintiff to make such contract, unless he shall give notice in writing to the plaintiff, at the time of pleading, that he intends to do so.

3. No copies furnished to this court, on the argument of any case, not certified by the clerk, shall be taxed in the bill of costs.

4. The clerk shall provide copies for the court of all motions for new trial reserved, at the expense of the party filing the same, unless he shall, at least within one month after the termination of the winter or spring term of the superior court, in the respective counties, apprize the clerk, that the case will not be carried forward; and the clerk shall immediately inform the Chief Justice of those cases, which he shall be so apprized will not be carried forward.