SEGARS (UNITED STATES v.). See Case No. 16,249.

## Case No. 12,633.

### SEGEE v. THOMAS et ux.

[3 Blatchf. 11.] [1]

Circuit Court, D. Connecticut. April, 1853.

PLEADING IN EQUITY—EFFECT OF ANSWER—PROCESS—SERVICE ON ATTORNEY—PARTIES—WITNESSES—SALE OF INFANT'S ESTATE—REQUISITES OF DEED—ESTOPPEL.

1. A defendant in a suit in equity, who appears and answers the bill, cannot, on the hearing, object that the bill contains no prayer for process, or that he was not served with process.

2. Where the defendant in an action at law brought a suit in equity, in the same circuit court, against the non-resident plaintiff in that action, to restrain its further prosecution: *Held*, that service of the subpœna in the equity suit upon the attorney for the plaintiff in the action at law, was a sufficient service to confer jurisdiction.

[Cited in Cortes Co. v. Thannhauser, 9 Fed. 228; Bush v. U. S., 13 Fed. 628; Romaine v. Union Ins. Co., 28 Fed. 639.]

3. The question of who are necessary parties to a suit in equity brought by a defendant in an ejectment suit, to restrain its further prosecution, considered.

4. An objection of want of parties must be taken by plea or answer, and the name or description of the parties who should be brought before the court must be specified. Such an objection cannot be taken at the hearing for the first time.

[Cited in Florence Sewing-Mach. Co. v. Singer Manuf'g Co., Case No. 4,884.]

5. Under the 34th section of the judiciary act of September 24th, 1789 (1 Stat. 92), a state statute allowing interested persons to be witnesses is applicable to trials in actions at common law in the courts of the United States, but not to suits in equity or criminal cases.

6. Where the order of a court of probate in Connecticut, authorizing the sale of an infant's real estate, declared, as a fact, that the notice of hearing required to be given by a previous order of the court had been given: *Held*, that, as the court was a court of record, and had jurisdiction of the matter, the order was conclusive as to the

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

fact of the notice having been given, where it was questioned in a collateral proceeding.

[Cited in May v. Logan County, 30 Fed. 255.]

[Cited in brief in Raley v. Guinn, 76 Mo. 264. Cited in Ex parte Sternes, 77 Cal. 163, 19 Pac. 277.]

7. A court of probate in Connecticut was authorized, by statute, to order, for just and reasonable cause, the sale of the real estate of a minor, on application of his guardian, and to empower him, or some other meet person, to convey the same, on giving bond with surety, and was required, on application for such order, to cause notice of the application to be published in a newspaper. A petition being presented October 31st, the court made an order assigning the 27th of December for its hearing, and directing the notice prescribed by the statute to be published. Nothing further was done by the court till the 26th of February following, when the guardian gave the necessary bond, and the order of sale was made: *Held*, that it was to be presumed, that the determination of just and reasonable cause was made by the court on the 27th of December, and that the time between that and the making of the order of sale was occupied in procuring a person to make the conveyance and in perfecting the bond; and that the order of sale was valid.

8. *Held*, also, that, under that statute, the deed of the land must refer distinctly to the order of sale, and give its date, and show on its face the authority of the grantor, and that the deed in this case was defective, the only reference in it to the order of sale being an averment that the grantor was "authorized by an order of the court of probate for the district of S." to make the deed.

9. *Held*, also, that the deed was defective, because it did not show that the notice of sale required by the order of sale had been given.

[Cited in Thurston v. Miller, 10 R. I. 360.]

10. *Held*, also, that a court of equity would interfere in favor of the grantee in the deed, to aid such defective execution of a valid power, there being no opposing countervailing equity.

11. *Held*, also, that, as the minor had received the money paid for the real estate on its sale, which was its full value, and had retained it and never offered to return it to the vendee, and the power of sale given by the court was valid, but had been defectively executed, and the vendee had gone into possession of the land, and made improvements on it adding greatly to its value, a court of equity would, in a suit by the vendee, perpetually enjoin the minor from further prosecuting an action of ejectment brought by him, after he became of age, against the vendee, to recover the land with the improvements, on the ground of the defect in the deed, and would compel him to convey the vendee all his right and title in the land.

12. *Held*, also, that this was not a case where there was an adequate remedy at law, although there were, in the deed, covenants of warranty, and of quiet enjoyment.

The bill in this case was filed by the plaintiff [Lewis C. Segee], a citizen of Connecticut, against the defendants [Henry Thomas and Lucy W. Thomas, his wife], citizens of New York. It set forth that, on the 11th of October, 1825, Elijah Waterman, late of Bridgeport, Connecticut, died intestate, leaving certain real and personal estate, and leaving a widow, Lucy Waterman, now deceased, and seven children, of whom the defendant Lucy W. Thomas was one; that administration was granted on the estate of the intestate; that, on the 25th of August, 1826, the widow was appointed guardian of Lucy W. Thomas, she then being a minor; that, on the 31st of October, 1826, the guardian presented her petition to the court of probate for the district of Stratford, within which district the guardian and the minor then resided and the land was situate, for liberty to sell certain land which the minor acquired by inheritance from her father; that, on the same day, an order of notice was passed by the court of probate, fixing the 27th of December, 1826, for the hearing of the petition; that, on the 26th of February, 1827, the same court of probate made an order for the sale of the land belonging to the minor, and authorized one Wilson Hawley to sell and convey the same; that it was for the interest and benefit of the minor that the land should be sold; that Hawley, in pursuance of the authority so given him, on the 12th of March, 1827, executed a deed for the land to the plaintiff, and received the full consideration for the same, which consideration, amounting to $1,129.71, was paid by the plaintiff to the guardian, for the use of the minor, and came to the hands of the said minor by her guardian, and was in full for the minor's interest in all the real estate which descended to her from her father, and was receipted for by the guardian; and that the plaintiff, soon after the execution of the deed, with the full knowledge, assent, and understanding of the minor and of the guardian, went into possession of the premises, and had, from that time to the bringing of the suit, expended large sums of money in the improvement of the same, and had been in the exclusive possession of the same, claiming them as his own, without any claim on the part of the guardian, or of Lucy W. Thomas, until April, 1850, when the defendants commenced, in this court, an action of disseisin against the plaintiff, demanding the surrender of the premises, which action was still pending. The bill further alleged, that the deed was defective, and that the order of the court of probate, of the 26th of February, 1827, was defective, and prayed that those defects might be cured, and that the defendants might be enjoined against any further proceedings in the action at law, and might be decreed to convey to the plaintiff all their interest in the premises. The bill contained no prayer for process. The subpoena was not served on either of the defendants, but they appeared and put in their answer to the bill. The case was heard on pleadings and proofs.

Ralph I. Ingersoll and James C. Loomis, for plaintiff.

Henry Dutton and William B. Bristol, for defendants.

INGERSOLL, District Judge. Upon the hearing, several objections were interposed to a decision of the case by the court upon its merits. These objections were not taken

either by plea or answer, but were raised for the first time on the hearing.

It is said that, in the bill, there is no prayer for process. The object of such a prayer is, that process may issue to bring the defendants before the court; and, if parties appear and make themselves defendants, with the consent of the court and that of the other parties, and answer the bill, they cannot afterwards allege that there has been no prayer for process. If the defendants wished to avail themselves of the objection that there was no prayer for process, they should have taken that objection by plea. This they have not done. By appearing and filing their answer and taking proofs, they admit that they are regularly defendants, and waive the objection, that there is no prayer for process and that process has been issued without such a prayer.

It is said further, that the court has no jurisdiction either of the subject-matter or of the persons of the defendants; that the 11th section of the judiciary act of September 24th, 1789 (1 Stat. 78), prohibits a suit from being brought in any other district than that of which a defendant is an inhabitant, or in which he is found; and that, in this case, the defendants were not inhabitants of this district, nor found within the same. By virtue of the section referred to, a citizen of one state may be sued in another state, if the process be served upon him in the latter state. This clause in the act is not a restriction of the jurisdiction of the court, but only a grant of a personal privilege—that of not being served with process out of the district in which the defendant resides or is found. Being only a personal privilege, it may be waived. The defendant is entitled to be served with process in the district where the court is holden. But, if he appears without such service, he waives the right of so being served with process. It has been held that, if a defendant who is served, in the state where he resides, with equity process from the circuit court of another state, appears, in pursuance of such process, and answers, without objecting to such service, he thereby waives his privilege, and the court has jurisdiction. Serg. Const. Law, 118; Logan v. Patrick, 5 Cranch [9 U. S.] 288. And, if he is not served anywhere with process of any kind, and appears in the suit and submits to the jurisdiction of the court, it is the same as if he had been regularly served with process. The object of process is to get the defendant into court, to answer and defend the suit; and his appearing, to answer and defend, without process, is as binding upon him as if he appeared in pursuance of process regularly served. In this case, the subpœna was served upon the attorney of the defendants, in Connecticut. That was the only service; and the defendants, by appearing and answering the bill, waived all other service.

But, if the defendants had not thus appeared, and waived the service of process, they could not, in any stage of the proceedings, have successfully objected to the service of the process as made. For, where a party residing out of the jurisdiction of the court has obtained a judgment at law, which is sought to be enjoined by a bill in equity filed in the same court by the defendant in the judgment, or where a non-resident has instituted a suit in equity, and a cross bill is filed by the defendant, it has been held that the court will order that service of the subpœna upon the attorney or solicitor of such non-resident party shall be sufficient. Hitner v. Suckley [Case No. 6,543]; Eckert v. Bauert [Id. 4,266]; Ward v. Seabry [Id. 17,161]; Read v. Consequa [Id. 11,606]. And the same rule would apply where an action at law is pending, and the defendant brings a bill in equity to enjoin the plaintiff from proceeding with the same.

It is said further, that there are not the proper parties to this bill. The object of the suit is to enjoin the defendants from further proceeding in the action at law, and to compel them to convey to the plaintiff whatever legal title they may have to the premises in controversy, in right of the defendant Lucy W. Thomas, as heir-at-law of her father. If the plaintiff did not acquire the legal title to the premises in question, by virtue of the deed from Hawley, it still remains in the defendant Lucy W. Thomas; for, the adverse possession of the premises by the plaintiff, from the month of March, 1827, to the time of the commencement of the action at law, and his using and improving the premises as his own, and holding the same against the rights of all other persons, would not give him any legal title to the same, as, when such adverse holding commenced, Lucy W. Thomas was a minor, and the action at law was brought within five years after she became of age. No one but the plaintiff has claimed, or can claim, any equitable title to the premises. No one but the defendants can be affected by a decree enjoining them from the further prosecution of the suit at law. No one but the defendants can be affected by a decree compelling them to convey to the plaintiff any legal title which they may have in the premises. It would seem, then, that, as no one but the parties before the court can be affected by the decree prayed for, the proper parties, and all the proper parties, are before the court.

But, if this were not so, the defendants should not be permitted to urge this objection, in this stage of the proceedings. They have not taken it by plea or answer, or specified, in any plea or answer, the name or description of the parties who should be brought before the court. And, it is expressly provided, by the 53d of the rules in equity, prescribed by the supreme court in 1842, that, "if a defendant shall, at the hearing of the cause, object that a suit is de-

fective for want of parties, not having, by plea or answer, taken the objection, and therein specified, by name or description, the parties to whom the objection applies, the court (if it shall think fit), shall be at liberty to make a decree, saving the rights of the absent parties." If, then, there were any rights of absent parties, in this case, which could be affected by a decree, it would be right, if the facts in the case authorized it, to make a decree, reserving the rights of such absent parties. But there are no absent parties whose rights can be affected by the decree.

There is nothing, then, to prevent this case from being decided on its merits. In order to decide it correctly, it is necessary to consider four several questions. Those questions are:

1. Has Mrs. Thomas received pay for the land now sought to be recovered in the action of ejectment?

2. If she has, does she now retain that pay, without any offer to return it?

3. Was there a valid order of the court of probate for the sale of the land in question? In other words, was there a valid power given by that court to Hawley to sell the land?

4. Was the deed conveying the land defective? In other words, if there was a valid power given by the court of probate to Hawley to sell the land, was that valid power defectively executed?

In considering the case, I lay aside the deposition of Thomas T. Waterman. He joined with Hawley as a grantor in the deed, with covenants of warranty of title, and also of quiet enjoyment. He is interested in having the land in question secured to the plaintiff. If it is not so secured, he will be responsible to the plaintiff in damages, for the breach of such covenants. It is not claimed that he is a competent witness, unless he is made so by the recent statute of Connecticut, which authorizes parties and interested witnesses to testify, both in suits at law and in equity. The question, therefore, is, whether the rule of evidence established by that statute, for the state courts, governs this court, in a proceeding in equity? It is claimed that it does, by virtue of the 34th section of the judiciary act of September 24th, 1789 (1 Stat. 92). That section provides, "that the laws of the several states, except where the constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision, in trials at common law, in the courts of the United States, in cases where they apply." This section was intended to furnish a rule to guide the courts of the United States, in the formation of their judgments, in trials or litigations in court, in cases at common law. To enable them to form a judgment in such cases, the laws of the several states are to be regarded as rules of decision, or rules of evidence. But the section does not apply to cases in equity, or to criminal cases. If this were a trial at common law, I should hold that Thomas T. Waterman, although interested in the event of the suit, was, by virtue of the Connecticut statute, and of this act of congress, a competent witness. But, as this is a proceeding in equity, he is not a competent witness. The rules of evidence in the courts of the United States, in equity cases, and in criminal cases, are not affected by any state statute made on the subject.[2]

1. Has Mrs. Thomas received pay for the land now sought to be recovered in the action of ejectment? At the time of the death of her father she was a minor, and did not arrive at full age until about the year 1846 or 1847. Soon after her father's death, her mother, Lucy Waterman, was appointed her guardian, and she, as guardian, on the 31st of October, 1826, petitioned the court of probate for the district of Stratford, for liberty to sell the land belonging to the minor, and which descended to her from her father, and which included the land now in controversy. On the 26th of February, 1827, an order was passed by the court of probate, empowering Wilson Hawley to sell the land. On the 12th of March, 1827, Hawley executed a deed of the land, and, on the 14th of March, 1827, there was paid to the guardian the sum of $1,129.71, as expressed in the receipt which the guardian gave at the time, "in full of all the right, title, and interest which my daughter, Lucy Wolcott Waterman, has, or ought to have, in, unto and upon the estate of said Elijah Waterman, her late father, and in full of her portion in said estate, which sum I do hereby acknowledge to have this day received, as mother and guardian, to said Lucy Wolcott Waterman, she being a minor under the age of twenty-one years." It is admitted, in the answer, that, on the same 14th of March, that sum was paid to the guardian, as stated in the receipt, and that the receipt was duly executed by the guardian.

The guardian was the person appointed by law to receive what was due or payable to the minor; and a payment to the guardian was a payment to the minor. For what, then, was this payment made? Was it made for the land in question, or for some other consideration? It is expressed in the receipt to have been for the minor's portion in the estate of the deceased. It was for her portion either in the personal estate, or in the real estate. If she had any portion in any personal estate, to any amount, then it might be right to infer that it was for such portion

[2] Several cases have been decided by the supreme court in which it has been held, that the laws of the states prescribing rules of evidence, in civil cases, in trials at common law, are applicable, in like cases, to like trials in the courts of the United States. McNiel v. Holbrook, 12 Pet. [37 U. S.] 84, 89; Brandon v. Loftus, 4 How. [45 U. S.] 127; Sims v. Hundley, 6 How. [47 U. S.] 1, 6. But state statutes are not applicable to criminal cases in the courts of the United States. U. S. v. Reid, 12 How. [53 U. S.] 361. See note to U. S. v. Reed [Case No. 16,134].

in the personal estate. If she had no portion in any personal estate, but had a portion in the real estate, then it would be right to infer that it was for such portion in the real estate. For, if it was for her portion in some estate which came from her father, and which belonged to her, and there was no personal estate which belonged to her, but there was real estate which belonged to her, then it necessarily follows that the money was paid for some portion of the real estate.

The records of the court of probate show, that there was no personal estate, belonging to the heirs, to be distributed. All that belonged to them was real estate. Mrs. Thomas' share was a little short of $600, according to the valuation in the inventory. For this share she was paid over $1,000. It was paid to her guardian, the person appointed by law to receive it. The receipt shows for what it was paid. She was not only paid for it, through her guardian, but she has had the benefit of such payment. With it she has been supported and educated. And, if any thing was left in her guardian's hands, after deducting the cost of such support and education, she has received from the estate of her guardian more than sufficient to make up what may have been so left. She has, therefore, received pay for the land now sought to be recovered in the action of ejectment.

2. The second question is easily answered. It is not claimed by the defendants, that they, or either of them, have ever offered to return to the plaintiff any thing which Mrs. Thomas received as pay for the land. They deny, or they must deny, that she ever received any such pay. This fact is proved against them, and they are compelled to admit that, if she did receive such pay, it is retained, without any offer to return it.

3. Was there a valid order of the court of probate for the sale of the land in question? In other words, was there a valid power given by the court of probate to Hawley, to sell the land? The petition of the guardian for the sale of the land was presented to the court of probate on the 31st of October, 1826. On that day, the court of probate passed an order, that the 27th of December, then next, be assigned for the hearing of the petition, and directed notice to be given, by advertisement, in a newspaper printed in Bridgeport, for three weeks successively, at least six weeks before the assigned time. On the 26th of February, 1827, the court of probate passed an order for the sale of the land, and authorized Hawley to sell it. And, in passing such order, the court found that the notice required by the order of the 31st of October, 1826, had been given. It is claimed by the defendants, that the order of the 26th of February, 1827, was a void one—that it conferred no authority on Hawley to sell the land—that it was an invalid power. Two objections are made to it: First, that no notice was given in pursuance of the order of the 31st of October, 1826. Second, that it does not appear, by any record of the court of probate, that the hearing of the petition was continued from the 27th of December, 1826, to the 26th of February, 1827, the time when the order of sale was made.

As to the first objection: Courts of probate are courts of record. Full faith and credit are due to their official acts, when regular on the face of them. As much faith and credit are due to them, so long as they remain unreversed, not appealed from and not set aside, as are due to the official acts of other courts of record.

The order of the court of probate authorizing the sale of the land in question finds, that notice in conformity with the order of the 31st of October, 1826, had been given. The record, then, of a competent court, acting within its legitimate powers, has declared that notice in pursuance of the order was given. That record must be considered as speaking the truth, and as conclusive, if it is not void on its face, until it has been reversed, or in some way set aside, or vacated, or appealed from. And there is no claim that it ever was appealed from, or in any way vacated or set aside.

As to the second objection: In the petition for the sale of the land, it was alleged that it was for the interest of the minor that the land should be sold. On that petition, the court of probate, on the same day it was presented, passed the order referred to, and assigned the 27th of December, 1826, to determine the question, whether it was for the interest of the minor that the land should be sold. By the statute law of Connecticut then in force, (see St. Conn., Ed. 1821), the several courts of probate were authorized, for just and reasonable cause, to order the sale of the real estate of any minor, on application of the parent or guardian of such minor, and to empower him or some other person to sell or convey the same, upon his giving bond with surety as by the statute is provided. And, by a subsequent part of the same law, it is made the duty of the court of probate, whenever application shall be made for an order to sell the real estate of any minor, to cause notice of such application to be published in some newspaper, near where the real estate lies, three weeks successively, at least six weeks before making the order. The 27th of December, 1826, was the day fixed, not for making the order of sale, but for determining the question, whether there was just and reasonable cause to have such order made. It would not follow that an order of sale would be made upon determining the question of just and reasonable cause in the affirmative. That question might be determined in the affirmative, and yet no order of sale be made. Two things were to be done, after such question should be determined in the affirmative, before an order of sale could be made, to wit, first, to obtain some person

to consent to execute the power; and secondly, to receive from such person so consenting a bond, with surety, that the power should be executed in the manner required by law. These two things were to be done before an order of sale could be made. They might be done either at the time fixed for the determination of the question of just and reasonable cause, or at some future time.

Although the bond required by law upon an order authorizing the sale of the minor's land, was not given until the 26th of February, 1827, and although the order authorizing the sale was not made until that time, there is nothing in the order inconsistent with the idea that the determination of the question of just and reasonable cause was made on the 27th of December, 1826. And, as every thing, particularly after this lapse of time, is to be presumed to have been rightly done, it is fair to infer from the order itself, that the determination of the question of just and reasonable cause was made on that day; that, subsequently thereto, Hawley consented to execute the power; and that, he having, on the 26th of February, 1827, given bond with surety, as by law required, the order of sale was then passed.

The order of sale, therefore, it not having been appealed from, reversed, or vacated, must be considered as a good and valid order.

4. Was the deed for the conveyance of the land defective? Was the power given defectively executed? The plaintiff in his bill says, that the deed is defective. The defendants in their answer admit, that the deed is defective in form, and as they are advised, defective also in substance. And, as both parties say it is defective, no one can complain if the court treats it as a defective deed.

The deed must, however, be considered as defective, irrespective of the admission of the parties. The power given by the court of probate to Hawley, to sell the land, was defectively executed. The order authorizing the sale was dated February 26th, 1827. The only reference to the order of sale in the deed is as follows: "Being thereto authorized by an order of the court of probate for the district of Stratford." The date of it is not given. By the decisions of the state courts, this is not sufficient to make the deed a good one. The authority of Hawley does not sufficiently appear on the face of the deed. The reference to the order is not sufficiently distinct. Watson v. Watson, 10 Conn. 77.

The deed is defective in another particular. The order of sale directed Hawley, before a sale was made, to give notice of the same, by advertisement, on the sign-post in Bridgeport, and in a newspaper printed at Bridgeport. There is nothing in the deed to show that this direction was complied with; and no evidence is produced to show that any notice was given. The deed, therefore, must be considered defective. And the power given to Hawley was defectively executed.

The question, then, is—what should a court of equity do under the circumstances? Whatever may be said against the right of a court of equity to interfere, to aid a defective and invalid power, it is very clear that it is always ready to interfere to aid the defective execution of a valid power. Nothing is more common than for a court of equity to interfere to aid such defective execution of a valid power, when there are no opposing equities on the other side. In the deed in question, there is clearly an intention manifested by Hawley to execute the power given him. He made an attempt to execute it, and the execution was defective. A man has power to execute a deed of land. The statute requires that all deeds of land shall be executed in the presence of two witnesses. The deed is executed, by mistake, with only one witness. Equity will relieve. In this case, there was no statute regulation to be followed, in the execution of the power, by the neglect of which the execution of the deed was defective. But the two defects existed, which have been pointed out. And, to aid defects of this kind, a court of equity will interfere, when there is no opposing countervailing equity. 1 Story, Eq. Jur. §§ 95, 169–179; Smith v. Chapman, 4 Conn. 344; Watson v. Wells, 5 Conn. 468; Carter v. Champion, 8 Conn. 549; Sumner v. Rhodes, 14 Conn. 135. Is there, then, any opposing equity on the part of the defendants? None can be discovered. Upon the petition of the guardian, the court of probate, after due notice to all concerned, found and adjudged, that it was for the advantage of the minor to have the land sold, and that her interest would be promoted thereby. That being so, the court authorized Hawley to sell the land. He bargained with the plaintiff for the sale, and made a defective deed of the land. Upon the execution of such defective deed, all parties supposing it to be good and valid, the plaintiff paid the full value for the land, which full value was paid to the guardian. Thereupon, the plaintiff went into possession, using and improving it as his own, and, by his expenditures, greatly adding to its value, no one, until the commencement of the action at law, in April, 1850, contesting his right. Mrs. Thomas received the pay for the land, and now retains it, never having offered to return it; and, while so retaining it, seeks to recover the land, with all the improvements, upon the ground that the deed was defective in form. These facts show a strong equity on the part of the plaintiff, and no equity on the part of the defendants.

It is claimed, however, on the part of the defendants, that, notwithstanding this is so, the plaintiff has an adequate remedy at law, and therefore no relief should be granted. This remedy, which it is said the plaintiff has, is the right to bring an action at law, for damages, against Hawley, on the covenants contained in his deed. This is the only remedy at law which the plaintiff has. And, although it is a remedy which he may have at law, it is

not an adequate remedy at law. How much of a remedy the plaintiff may have upon such covenants, does not appear. Whether any one liable upon such covenants would be able to respond in damages for the breach of them, has not been made manifest. But, whether any one be able to respond or not, that should not be considered a sufficient reason why the defendants should not be restrained from doing that, the doing of which is inequitable and unjust, or why the defendants should be permitted to violate the equitable rights of the plaintiff. There is no remedy in favor of the plaintiff, by action at law, against the defendants. They are attempting to do that which, in equity and good conscience, they ought not to do. And, even if there was a remedy at law against the defendants, it would not prevent the interference of this court, as a court of equity, unless that remedy at law was a full and adequate remedy. For, it has been held, that the courts of the United States, as courts of equity, will grant relief to a legatee, against an administrator, although the party plaintiff may have a remedy at law, on an administration bond. Pratt v. Northam [Case No. 11,376].

The decree of the court therefore is, that the defendants be restrained from the further prosecution of their action at law against the plaintiff, and be decreed to release and convey to the plaintiff all right and title to the land sought to be recovered in that action, and that the defendants pay to the plaintiff his costs.