1821.

WADSWORTH
v.
WENDELL.

WADSWORTH *against* WENDELL and others.

A defective conveyance by a person seized in fee at the time, is good, so as to bind the lands conveyed, in the hands of the grantor and his heirs. It is good, also, against a subsequent purchaser with notice of such prior defective conveyance.

As, where a soldier entitled to military bounty lands, under the several acts of the legislature, by an instrument in writing purporting to be under his hand and seal, but to which no seal was, in fact, affixed, for a valuable consideration, sold, quit-claimed, and confirmed to the plaintiff, his heirs, and assigns for ever, all his right, title, claim, and demand to and for all the land to which he was entitled as a soldier, &c. with covenant for further assurance; no patent having then issued for the land: which instrument of conveyance was duly deposited in the office of the Clerk of the county of *Onondaga*, on the 29th of *April*, 1795, pursuant to the act of the 8th of *January*, 1794, and afterwards, on the 8th of *March*, 1799, duly proved: and the same grantor, on the 25th of *October*, 1796, executed a deed in fee for the same land to *P.*, under whom the defendants claimed title: *Held*, that although the first instrument, for want of a seal, was defective as a *legal* conveyance, yet it passed all the right and interest of the grantor in *equity*, the omission of the seal being a mistake, contrary to the express intention of the parties : that the deposit of the instrument in the clerk's office, pursuant to the act of the 8th of *January*, 1794, was legal notice to all subsequent purchasers of its contents, and equivalent, in that respect, to a registry of it: and that *P.* and those claiming under him were chargeable with *notice* of the prior conveyance to the plaintiff; and the defendants were, accordingly, decreed to release to the plaintiff all the right and title derived to them under *P.*

*April 9th, and May 3d.*

THE bill, (filed *May* 29th, 1817,) stated that *John Thomas* was a soldier in the Second *New-York* Regiment, during the revolutionary war, and entitled to a grant from the state of 600 acres of land. That letters patent were issued to him on the 9th of *July*, 1790, for No. 11 in the township of *Solon*. That on the 5th of *September*, 1789, *J. T.* the soldier, for a valuable consideration, sold all

his right, title, and demand to his military bounty lands, to the plaintiff, in fee, and covenanted to make further assurance.   This instrument of transfer concluded in these words : " In witness whereof, I have hereunto set my hand and seal," &c. ; but there was no seal affixed to it.   The instrument was deposited, on the 29th of *April*, 1795, in the office of the Clerk of the county of *Onondaga*, and was duly proved on the 28th of *March*, 1799.   That *J. T.* died intestate ; and the defendants who are in possession of the lot, claim title to it, under a conveyance from the soldier, as they allege ; but which conveyance, if any there was, the plaintiff averred to have been given subsequent to the instrument so deposited in the Clerk's office, and with legal notice of it.   That about four or five years since, the plaintiff brought an action of ejectment against the defendants, to recover possession of the lot ; and the action was tried in 1814, and a verdict found for the plaintiff ; but the Supreme Court, on a case made by the parties, decided, in *October*, 1815, that the instrument so deposited by the plaintiff, not being under seal, was not sufficient to convey the legal estate, and gave judgment for the defendants.   (*Vide* 12 *Johns. Rep.* 355.)   Prayer for general relief.

The defendants, in their *answer*, admitted that the defendant *John Matthews*, and three tenants under him, were in possession of the lot in question, by permission of the other two defendants.   They stated that the lot was devised to the defendants by *David Matthews*, of *Vermont*, in fee, in *trust*, for the children, by name, of *D. M.*, now deceased.   That *D. M.* the testator, derived his title under a patent, dated *July* 9th, 1790, to *John Thomas*, for the lot in question, a deed from *J. T.* to *William Preston*, in fee, dated 25th *October*, 1796, for the consideration of 400 dollars, acknowledged the same day, and recorded the 15th of *February*, 1797, and a deed from *W. P.* to *D. M.* dated the 29th of *August*, 1797, in fee, for the consideration

1821.

WADSWORTH
v.
WENDELL.

1821.

WADSWORTH
v.
WENDELL.

of 1000 dollars, for the same lot, excepting 50 acres, in the S. E. corner of the lot, sold by the Surveyor General. That *D. M.* the testator, died the 29th of *March*, 1811, and the defendant *J. M.* is his son. That *J. M.* paid, *bona fide*, 750 dollars to *W. P.* for his interest in the lot. That in 1798, or 1799, *Levi White* went into possession of the lot under *D. M.*, and possession has been held under that title, until the present suit. That improvements have been made on the lot to the value of 3000 dollars. That *D. M.* when he purchased, had no knowledge of the deed to the plaintiff, or of his claim. That in 1799, the defendant *Morris*, the son in law of *D. M.*, went into possession of a part of the lot, and continued in possession four years, and never heard any thing of any adverse claim, until 1800. The defendants admit that an action of ejectment was brought, and the proceedings and judgment, as stated in the bill.

The instrument of conveyance under which the plaintiff claimed, was made an *exhibit* in the cause, the granting part of which was in these words : " I, *John Thomas*, of *New-Haven*, in the state of *Connecticut*, corporal in the Second or *New-York* Artillery Regiment, in the service of the *United States of America*, for and in consideration of a valuable sum received to my full satisfaction, before the sealing and delivery of these presents, of *James Wadsworth*, jun. of *Durham* in *Connecticut*, have sold, quit-claimed, and confirmed to the said *James Wadsworth*, jun., his heirs and assigns for ever, all the right, title, claim, and demand, which I or my heirs or assigns may have, at any time hereafter, to all the land and lands which I or either of them may hereafter be entitled to, from the State of *New-York*, or from the Congress of the *United States* of *America*, for my services as corporal in the Second or *New York* Regiment of Artillery, in the army of the *United States of America*, for during the war with *Great Britain*, and to every part and parcel thereof." The residue of the in-

strument contained covenants on the part of the grantor to ensure the title, and concluded, " In witness whereof, I have hereunto set my hand and seal," &c.

*April* 9th. The cause was this day brought to a hearing on the pleadings and proofs.

*Van Vechten*, for the plaintiff. He cited, 10 *Johns. Rep.* 497. 2 *N. R. L. K. & R's Ed.* 262. 1 *N. R. L.* 209. 1 *Caines' Rep.* 82.

*Henry*, contra. He cited, 12 *Johns. Rep.* 355. 8 *Johns. Rep.* 141. 3 *Johns. Rep.* 388. 424. 2 *Johns. Ch. Rep.* 190.

THE CHANCELLOR. The plaintiff sets up an equitable right to lot No. 11, in *Solon*, in the county of *Cortlandt*. The original patentee was *John Thomas*, a soldier in the *New-York* regiment of artillery, in the revolutionary war; and the patent to him for the lot was dated *July* 9th, 1790. His right commenced with the concurrent resolution of the legislature, of the 27th of *March*, 1783, and was confirmed by subsequent acts of the legislature. The act of the 11th of *May*, 1784, directed letters patent to issue to the officers and soldiers entitled under the concurrent resolution of 1783, and that the military bounty lands be laid out in the manner therein prescribed. The act of the 28th of *February*, 1789, directed the commissioners of the land office to lay out these lands into townships, and the townships into lots, and then to proceed to ballot for each soldier's lot. In this inchoate state of the military rights, the above patentee, on the 5th of *September*, 1789, (having then an equitable right, but no legal title,) sold, quit-claimed, and confirmed all his " right, title, claim, and demand," to the said lands, to the plaintiff, by a conveyance, purporting to be a deed in fee, and to be given for a valuable consideration, but which had no seal affixed to it. After this conveyance, the act of 6th *April*,

*May* 3d.

1790, was passed, giving letters patent for the military boun-ty lands, an operation as and from the 27th of *March*, 1783, so as to be deemed to have vested a title in the grantees from that time; and it declared that " all grants, bargains, sales, devises, or other dispositions," made by the grantees, or their heirs or assigns, of the said lands so to be granted, between the 27th of *March*, 1783, and the date of the letters patent, should be good and effectual, as if the letters patent had been granted on the 27th of *March*, 1783.

*Thomas*, the soldier, is then to be deemed, by the force of this last statute, to have been legally seized of the lot in question, when he sold to the plaintiff, by an instrument in-tended to be valid, but by mistake or ignorance, not compe-tent to convey an estate in fee, at law, according to the de-cisions of the Supreme Court. The conveyance, however, was equally valid as if the soldier had been seized in fee at the time of making it; and though it be a defective convey-ance, for want of a seal, yet it created such an equity as to bind the lands in the hands of the soldier and of his heirs. The only point in the case is, whether subsequent *purchasers* from *Thomas* were also bound by that equity, in consequence of the deposit of that conveyance, under the acts of 8th of January, 1794, and 27th of *March*, 1794.

I think it is a clear point, that *Thomas* was bound by the conveyance to the plaintiff, and that it passed all *his* right and interest in equity. It was not intended to be an agreement only to convey, but an actual present convey-ance of all his right and title; and, in equity, it did pass it. The omission to affix a seal, was a mere mistake, contrary to the intention of the parties; for the instrument concluded with these words : " In witness whereof, I have hereunto set my hand and seal." It also contained a covenant, for fur-ther assurance, and that he would *at any time thereafter, at the request, cost, and charges of the plaintiff, his heirs and assigns, make, seal, and execute any reasonable act, convey-*

*ance, and assurance in the law, for the perfect granting, quit-claiming, and confirming all his right, title, and demand to the lands aforesaid.* Thomas and his heirs could have been compelled to have executed a more perfect conveyance, and one competent to have passed the legal title to the plaintiff. But he, afterwards, in 1796, conveyed his legal title, by a deed in fee, to *Preston,* under whom the defendants claim; and the question is, whether *Preston,* and all holding under him, were not chargeable with notice of the equity of the plaintiff.

The act of 8th of *January,* 1794, directed, " that all deeds and conveyances heretofore made and executed, or pretended so to be, of and concerning, or whereby any of the said lands might be any way affected in law or equity, should, on or before the 1st of *May,* 1794, be deposited in the clerk's office, &c. and if not, that they should be adjudged fraudulent and void, against any subsequent purchaser or mortgagee, for a valuable consideration; and all deeds and conveyances thereafter to be made, were to be recorded, or to be adjudged fraudulent and void, against any subsequent purchaser or mortgagee, for a valuable consideration, whose deed should be first recorded," &c. The time for depositing the deeds was afterwards prolonged to the 1st of *May,* 1795, and it appears in proof, that the conveyance to the plaintiff was duly deposited, in pursuance of the act, on the 27th of *April,* 1795, and was afterwards duly proved, on the 8th of *March,* 1799, and the identity of the soldier is perfectly ascertained.

The deposit of these conveyances was intended by the legislature to be notice to all subsequent purchasers of their existence and contents, and the deposit of them would have been, in a degree, useless, if it was not intended to operate as notice. The deposit, as to all deeds and conveyances made prior to the act, was intended as a substitute for the prior registry of them, and to be from the date of the deposit, equiva-

A deposit of a conveyance of military bounty land, pursuant to the act of the 8th of *January,* 1794, was equivalent to a record, and operated as a notice to subsequent purchasers.

1821.

WADSWORTH
v.
WENDELL.

lent to the recording of them. It was the policy of that statute to place all the military titles upon record, and by another revision in it, all future conveyances of any of these lands were to have priority, according to the registry of them. The words of the act were comprehensive enough to embrace the case of the plaintiff's conveyance, for it reached to every instrument of or concerning these lands, and whereby these lands might be affected, in law or equity. Deeds and conveyances, any way affecting the title prior to that day, were to be deposited, and deeds and conveyances thereafter were to be recorded ; and the omission to deposit in the one case, and the omission to record in the other, equally avoided the conveyance as against subsequent purchasers, without notice, whose deeds were first recorded. There was no space of time left, in which the files and records in the clerk's office were not to contain the test of the title ; and I cannot entertain a doubt, that the deposit was intended to be, and was, in judgment of law, as effectual notice to purchasers in the one case, as the record of subsequent deeds was notice in the other. It is settled, (*Johnson* v. *Stagg*, 2 *Johns. Rep.* 510. *Frost* v. *Beekman*, 1 *Johns. Ch. Rep.* 298. *Parkist* v. *Alexander*, *ib.* 389.) that the registry of a mortgage under the mortgage act, is notice to all subsequent purchasers and mortgagees ; and the same construction ought to be given to the act above referred to, for the case is within the same reason and policy.

A defective conveyance binds the lands, in equity, against the heirs of the grantor.

When, therefore, *Preston* purchased of *Thomas*, and when *Matthews* purchased of him, they were each of them chargeable with notice of the conveyance of *Thomas* to the plaintiff, and of its contents. They, therefore, took, subject to that equity, equally with *Thomas* himself, or with his heirs ; and in the words of Ch. B. *Eyre*, in *Morse* v. *Faulkner*, (1 *Anst.* 14.) " It is clear, that where there is an agreement to convey, or a defective conveyance by a person then actually having title, that would be such an equity as would bind the lands in the hands of the heir." So, a defective con-

veyance has been held good against a subsequent voluntary grantee. (*Martin* v. *Seamore*, 1 *Ch. Cas.* 170.) But what is more to the point, a defective conveyance of copyhold, which was void in law for want of being presented in due time, was made good against a subsequent purchaser, with notice of the prior defective surrender, and the subsequent purchaser was decreed to pay the debt which the defective surrender was intended to secure, by way of mortgage, or else to surrender the legal estate. (*Jennings* v. *Moore*, 2 *Vern.* 609.) Assuming the subsequent purchasers in the present case under *Thomas*, to have had notice of the conveyance to the plaintiff, that case is in point; and it was decided by Lord Chancellor *Cowper*, in 1708. We find a similar decision a century afterwards, in the recent case of *Daniels* v. *Davison*. (17 *Vesey*, 433.) In this latter case, Lord *Eldon* decreed specific performance of a contract against a subsequent purchaser, with notice of the equitable title of the plaintiff. He was charged only with constructive notice, and was to be considered as a purchaser, subject to the plaintiff's equity; and such a conveyance from the purchaser was decreed, as the master should settle. In short, the doctrine is too well established, and is too just, in itself, to admit of any doubt: and it being entirely clear that the equitable title was in the plaintiff when *Preston* purchased of the soldier, and that the deposited conveyance was, by the force and operation of the statute, notice of its contents to every subsequent purchaser, it follows, as a necessary consequence, that the plaintiff is entitled to a conveyance from the defendants of all the right and title to the lot which they held as trustees, under the will of *David Matthews*.

I shall, accordingly, decree, that the defendants, within forty days after the service of a copy of the decree, release and convey to the plaintiff, in fee, all the right and title derived to them as trustees under the will of *David Matthews*, deceased, to the said lot No. 11, in *Solon*, by a

1821.

WADSWORTH
v.
WENDELL.

Specific performance decreed of a contract against a subsequent purchaser, with notice of the plaintiff's equitable right.

proper and valid deed in law, to convey such right and title, the form of which is to be settled by a master, at joint expense, if the parties or their counsel cannot otherwise agree upon the same; and that no costs of this suit be charged by either party as against the other.

Decree accordingly.