## WATSON and others *against* WELLS :

### IN ERROR.

If a deed be defective, through mistake, in a statute requisite, chancery will sup-ply the defect, in favour of a grantee *bona fide*, and for valuable consideration, not only against the grantor, but also against a subsequent purchaser or incum-brancer with notice.

The vendor of an estate has, in equity, a lien on the land for the purchase money unpaid, which prevails against the purchaser and his heirs, and against all per-sons claiming under him with notice.

Actual notice to an agent being constructive notice to his principal ; and each partner being, in relation to the concerns of the partnership, the authorized agent of the others ; actual notice to one partner is constructive notice to all.

*Qu.* Whether the record of a deed defective in a statute requisite, furnish any presumption of notice to strangers.

Where the grantor of a defective deed, who had subsequently transferred all his right in the premises, was made a party defendant to a bill for confirmation of the title under such defective deed ; it was held, that he had an interest in the

subject matter, which rendered it proper to make him a party; and that, after an unsuccessful defence, he was liable to the payment of costs.

In a suit in chancery for confirmation of a defective title under a mortgage deed, the value of the mortgaged premises requisite to give the court jurisdiction, must appear on the record.

This was a bill in chancery, brought originally to the superior court, against *Luke Watson* and *Bissell* and *Haskell*, stating a defect in a mortgage deed executed by *Watson* to the plaintiff, and praying for a confirmation of his title.

The facts in the case were these. On the 26th of *November*, 1819, *Wells* sold his farm in *East-Windsor* to *Watson*, for the consideration of 1656 dollars; and, as a part of the same transaction, it was agreed between them, that *Watson* should secure the payment of the purchase money, by a mortgage of the premises. *Jonathan Pasco*, Esq. drew the deeds, and took the acknowledgments. *Pasco* and one *Spaulding* were called as witnesses to the deeds. They both subscribed their names as witnesses to the deed from *Wells* to *Watson*; and meant also to subscribe their names, in the same manner, to the mortgage deed from *Watson* to *Wells*; and *Spaulding* did so subscribe his name; but *Pasco*, through mere mistake, omitted so to do. Both deeds were delivered, and were recorded in due season. The mistake was unknown to the parties, at the time; and was first discovered by the plaintiff, a few months before the commencement of this suit. By deeds executed on the 11th of *August* and 17th of *November*, 1823, *Watson* conveyed to *Bissell* and *Haskell*, who were partners in trade, *Haskell* being the acting partner, all the interest in the premises then belonging to him, in satisfaction of a *bona fide* debt due from him to them. At the execution of these deeds, *Bissell* had actual notice of the defect in question; but *Haskell* had no notice of it, except such as may be implied from the record of the deed.

There was no averment in the bill, or finding by the court, of the value of the premises mortgaged by *Watson* to the plaintiffs.

The defendants appeared and defended; and after a hearing, the court decreed, that the title to the premises should be as perfectly vested in the plaintiff as if said mortgage deed had been duly attested by two witnesses; and that the defendants should pay the plaintiff his costs of suit. On motion of the defendants, the record was transmitted to this Court for revision.

*T. S. Williams* and *Scarborough*, for the plaintiffs in error, contended, 1. That equity will not supply the want of a statute

Watson
*v.*
Wells.

requisite in a deed, against a subsequent *bona fide* purchaser, in consideration of a previous debt, with notice of the defect. He has a good title at law; and his equity is equal to that of the grantee under the defective deed. Here was no fraud; no want of consideration; and no advance of money, after notice of another's equity. *Bissell* and *Haskell* were creditors. They saw, that there was a legal title in their debtor; and they took that title, to secure their debt. They might, unquestionably, have levied an execution on this land, with notice of the prior defective conveyance, and have obtained a title, which no court of equity would invalidate. How does their present condition differ from the one supposed?

2. That *Bissell* and *Haskell* had not such notice as a court of equity will regard. In the first place, notice to one of two partners is not notice to the other, unless it relates to the business of the copartnership. Secondly, notice to *Haskell* could not be *implied* from the record. It may be admitted, that the record of a perfect deed would furnish notice; but from the record of a writing, which is not a deed, which transfers no title, and which the law, therefore, does not require to be recorded, the law will imply nothing. If *Haskell* had gone to the record, to ascertain whether *Watson* had previously divested himself of his title, he would have found, that he had not.

3. That the decree against *Watson* was erroneous, as he had parted with all his interest, previous to the commencement of the suit, and could not be made a party, or be subjected to costs.

4. That the court had no jurisdiction; the value of the matter in demand not being averred or found to exceed 335 dollars.

*Daggett* and *H. Terry*, for the defendant in error, contended, 1. That the vendor has a lien upon the land, for the purchase money, against the purchaser, and all claiming under him, with notice. *Sug. Vend.* 352. 1 *Madd. Chan.* 312. 2 *Madd. Chan.* 105. *Garson* v. *Green*, & al. 1 *Johns. Ch. Rep.* 308. *Irvine* & al. v. *Campbell*, 6 *Binn.* 118. *Gilman* v. *Brown* & al. 1 *Mason* 191. 213.

2. That if there be an agreement to convey land to one, and no conveyance or a defective one be made, and another, with notice of the facts, purchase the land, and pay the whole purchase money, equity will compel the latter to convey the title to the former. *Finch* v. Earl of *Winchelsea*, 1 *P. Wms.* 279. 280. and cases there cited. *Jennings* v. *Moore*, 2 *Vern.* 609. *Wadsworth* v *Wendell* & al. 5 *Johns. Ch. Rep.* 224. 231.

3. That *Bissell* and *Haskell* discharged a *debt*, which they had against *Watson*, instead of paying him the money, made no difference in the case.

4. That *Bissell* and *Haskell* had notice of the defective conveyance. *Bissell* had actual notice; and *Haskell* had constructive notice as the partner of *Bissell*, and from the record. The defect was apparent from the face of the record; and if it gave notice of any thing, it gave notice of that defect.

5. That as *Watson* was a party to the defective deed, he was properly made a party to this suit; and as he appeared and defended unsuccessfully, he was properly subjected, with the other defendants, to costs.

6. That the superior court had jurisdiction. [This point was touched upon lightly.]

HOSMER, Ch. J. In this case, the court has found the following facts.

The plaintiff sold and conveyed to *Watson* certain land, by a deed well authenticated; for the consideration of which purchase, *Watson* made to the plaintiff several notes of hand, yet unpaid, and mortgaged to him the premises as a collateral security. Two persons were present as witnesses, but through mere mistake, one of them omitted to subscribe his name as such. The deed was duly recorded; and the above omission, until within a few months past, was unknown to the plaintiff. Subsequent to the preceding facts, *Bissell* and *Haskell* being partners in trade, and *bona fide* creditors of *Watson*, took from him a deed of the premises; and at the delivery of it, *Bissell* had full knowledge of all the antecedent facts; but *Haskell* had only such notice of them from the recorded deed to the plaintiff, as the law, by construction, will presume.

The court decreed, that the title to the premises should vest in the plaintiff; and that the costs of suit should be paid by all the defendants. To reverse this decree, the record is brought for revision, before this court

That equity, as against the grantor, will aid a deed defective through mistake in a statute requisite, in favour of a purchaser *bona fide*, and for valuable consideration, is too clear to be questioned. The case of *Smith* v. *Chapman*, 4 *Conn. Rep.* 344. 346. is entirely analogous with the present, and precludes all controversy. Nor is it necessary, that there should be a request for the rectification of it, by the grantor. Established practice, and the case just cited, affirm this proposition.

It is equally indisputable, that equity will correct a similar mistake, in a like case, against a subsequent purchaser *with notice* of the transaction. The equity, in such case, is not equal; but the purchaser with notice, against integrity and good conscience, endeavours to deprive a prior purchaser of an equitable title. It is laid down by *Sugden*, in his *Law of Vendors and Purchasers*, that where a vendor delivers possession of an estate to a purchaser, without receiving the purchase money, equity, whether the estate be, or be not conveyed, gives the vendor a lien on the land for the money. *Sug.* 352. And this principle is supported by numerous determinations. *Chapman* v. *Tanner*, 1 *Vern.* 267. *Pollexfen* v *Moore*, 3 *Atk.* 272. *Cator* v. Lord *Bolingbroke* & al. 1 *Brown's C. C.* 302. *Blackburn* v. *Gregson*, 1 *Brown's C. C.* 424. *Austen* v. *Halsey*, 6 *Ves.* jr. 483. In *Walker* v. *Preswick*, 2 *Ves.* 622. Lord *Hardwicke* said, that this lien prevailed against the purchaser, his heir, or any claiming under him, *with notice* of the equitable title. On a bill against the assignees and heir of a deceased mortgagor, who was bankrupt, a surrender, defective by not having been presented within the time prescribed, was made good. *Taylor* v. *Wheeler*, 2 *Vern.* 564. cited in *Finch* v. Earl of *Winchelsea*, 1 *P. Wms.* 280. This, however, is peculiarly applicable to the first point made in my argument, as the heir and assignees stood in the place of the deceased mortgagor. In the case of *Burgh* v. *Francis*, which was the case of a mortgage by a defective conveyance, equity supplied the defect against subsequent incumbrancers. 1 *Eq. Ca. Abr.* 320. A defective surrender of copyhold land, for securing a sum of money, which had become void for want of being presented in due time, in the case of *Jennings* v. *Moore*, 2 *Vern.* 609. was made good against a subsequent purchaser *with notice*; and this fully establishes the principle I have advanced. Very recently, on the same principle, Lord *Eldon* decreed specific performance of a contract against a subsequent purchaser, with notice of the equitable title of the plaintiff. *Daniels* v. *Davison*, 17 *Ves.* jr. 433. It was determined, by a learned chancellor, in a neighbouring state, in the case of *Wadsworth* v. *Wendell* & al. 5 *Johns. Ch. Rep.* 224. 231. that a defective conveyance, by a person seised in fee at the time, is good, so as to bind the lands conveyed in the hands of the grantor and his heirs; and that it is also good against a subsequent purchaser *with notice* of such conveyance. The defect, in the above case, consisted in the want of a seal, and is precisely analogous with the princi-

pal one under discussion. It was most truly said, by the chancellor, " in short, the doctrine is too well established, and is too just in itself, to admit of any doubt." The case of *Wadsworth* v. *Wendell* & al. was brought before the court of errors, and the decision was reversed; but on a point entirely distinct from the one before mentioned. 20 *Johns. Rep.* 659. There was no notice to the subsequent purchaser; and for this reason, the determination of the chancellor was annulled. But the principle for which I have cited the case, was explicitly affirmed. It was said, by *Spencer*, Ch. J., *Platt* and *Woodworth*, Js. concurring, that as between the parties to the defective conveyance, the agreement, founded on a valuable consideration, would in equity be decreed to be executed specifically; and that " it admits of as little doubt that if *William Preston* and *David Matthews*, the subsequent purchasers, both of them had *actual knowledge* of the agreement between *Wadsworth* and *Thomas*, when they respectively took their deeds, they and their heirs would be compellable to convey to *Wadsworth*." Other cases establishing similar doctrine might be cited, and the strongest confirmation be derived from analogous decisions; but it cannot be necessary, on this point, to extend my observations. It results, then, unquestionably, that equity will aid the defective deed to the plaintiff, as against *Bissell* and *Haskell*, if they had *notice* of the plaintiff's equitable title, anterior to the delivery of the deeds to them, equally as against *Watson*.

I am inclined to think, that there was no constructive notice arising from the plaintiff's deed, to which there was only one witness; and that from the record of a deed, which is not complete according to law, and which, therefore, conveys nothing, there is no presumption of notice. On this subject, however, I would not be considered as giving an opinion. *Bissell*, it is, found, had actual knowledge of all the facts stated by the plaintiff; and that he was a partner in trade with *Haskell;* and that the mortgage deed to them, was for the security of a partnership debt.

It is a principle applied to negotiable notes and to bills of exchange, that notice to one of several partners is a sufficient notice to all, regarding the subject in which they are jointly interested. *Porthouse* v. *Parker* & al. 1 *Campb.* 82. *Chitt.* on *Bills*, tit. *Notice.*

This principle, however, is not peculiar to notes and bills only, but it rests on a reasonable and broad presumption, equal-

ly applicable to other cases. Each partner, so far as relates to their joint concerns, is the *authorized agent* of the other; and hence, notice to one partner is considered as notice to all the partners. A more rational presumption can scarcely be deduced; as from the habits of mutual communication on subjects of mutual interest, it would be extremely improbable that interesting facts, made known to one partner, should not be notified to those who have equal advantage in knowing them. Now, if one partner is agent for his co-partner, then the rule directly applies, that notice to the agent is notice to the principal. *Sheldon* v. *Cox* & al., *Ambl.* 626. In *Le Neve* v. *Le Neve*, 1 *Ves.* 64. Lord *Hardwicke* having decided, that the taking of real estate after a prior right, on valuable consideration, was a fraud, observes, that "this being so on notice in general, the next consideration under this head, is, whether notice to the attorney or agent is sufficient," he determines that it is. "Fraud," said he, "in the party being the foundation, it is the same, whether in the party himself, or *in the person employed.*" *Haskell,* then, had constructive notice of the facts before mentioned.

The decree against *Watson* was not erroneous. It was necessary, on the ground of interest, to make him a party to the suit; and the court had a discretionary right of subjecting him to costs; and as *Watson* defended, the discretion was rightly exercised.

Of the equity of the decree complained of, there exists no doubt; but the value of the mortgaged premises, essential to give jurisdiction to the court, not appearing on the record, the decision, for this reason only, must be reversed: and the cause remanded. *Griswold* v. *Mather*, ante 435.

PETERS, BRAINARD and BRISTOL, Js. were of the same opinion.

> Judgment reversed; and the cause remanded, to be proceeded with according to law.