THE TOWN OF COLCHESTER *v.* JOSEPH CULVER AND OTHERS, *heirs of* PHINEAS CULVER *deceased.*

*Defective deed. Chancery. Evidence.*

A paper purporting to be a deed which is duly signed, witnessed and acknowledged, but which has no seal affixed to it, furnishes sufficient testimony on its face that the signer intended to seal it and omitted to do so by mistake; and a court of chancery will rectify such an omission; and if the original paper is lost its existence and contents may be shown by secondary evidence.

APPEAL FROM THE COURT OF CHANCERY. The facts in the case sufficiently appear in the opinion of the court.

*L. B. Englesby and J. Maeck,* for the orators.

*Roberts & Chittenden,* for the defendants.

The opinion of the court was delivered by

ISHAM, J. The orators seek to have perfected in themselves a title to lot No. 215 in Colchester, which, it is averred, was conveyed to them by Phineas Culver on the 14th of December, 1821.

The premises are part of the ministerial right in that town, all of which, it is claimed, was conveyed to the plaintiffs except lot No. 91, which was reserved by the grantor. It is stated in the bill and admitted in the answers that Mr. Culver was seized of the premises in fee, as being the first settled minister in that town, and that there is upon the town records a copy of a deed which purports to convey to the plaintiffs the ministerial right in that town, with the exception above mentioned, but that it is defective as a deed in not being sealed by the grantor. That instrument, as appears by the office copy, was signed by Phineas Culver, duly witnessed, acknowledged, but without date, and recorded on the 21st of December, 1821. Phineas Culver having since deceased, and his heirs now making claim to his portion of the premises, this bill is brought against them to have the plaintiffs' title perfected under that instrument, by causing them to convey and release to the plaintiffs whatever right remains in them in consequence of that defective conveyance. If the allegations of the bill are to be regarded as proved, there can be no doubt as to the power and duty of a court of chancery to grant the relief prayed for in the bill. The case of *Wadsworth* v. *Wendall*, 5 Johns. Ch. 230, is very decisive on this subject. In that case the deed was defectively executed in not being sealed. The chancellor observed, "It is clear that where there is an an agreement to convey or a defective conveyance executed by a person then actually having title, that would be such an equity as would bind the lands in the hands of the heir;" and by a decree of the chancellor, they were required to release and convey to the plaintiffs all their right and title to the premises. The same doctrine was held by Lord Eldon in *Daniels* v. *Davison*, 17 Vesey 433, as applicable not only to heirs at law, but also to subsequent purchasers having notice of the equitable title of the plaintiff. If a deed was executed by Phineas Culver as stated in this bill and as it purports to have been from the office copy, it furnishes sufficient testimony on its face that it was his intention to affix a seal to his signature, and that it was omitted by some inattention or mistake. The deed itself concludes by saying, "In testimony whereof I have hereunto set my hand and seal," &c., and is then signed by Phineas Culver. From that circumstance alone in the case of *Wadsworth* v. *Wendall*, the

chancellor found that such an intention existed, and that the omission to affix a seal was a mere mistake and contrary to the intention of the party. The important and only inquiry, therefore, arises whether such a deed was in fact executed by Phineas Culver in his life time, and upon such a consideration as will warrant a court of equity to correct the deed or decree a specific performance of that agreement as against his heirs. In the outset the plaintiffs meet with a serious difficulty in not being able to produce the original instrument, defectively executed as it may be, which, it is stated, was executed on that occasion ; and that difficulty is increased by the fact that no person has been found who has seen the instrument, or who can testify to its contents. Perhaps the difficulty is no greater than would reasonably be expected from the length of time which has intervened since that period, as it is over thirty years since that instrument purports to have been executed. The proof in the case that a diligent and ineffectual search has been made for it, is sufficient to warrant the admission of secondary evidence to prove that it once existed, and its loss as well as its contents. In the case of *Williams* v. *Bass*, 22 Vt. 352, the plaintiff offered in evidence an office copy of a deed in his chain of title, which had no appearance upon its face that the original deed was sealed by the grantor. It was held that its antiquity alone was not sufficient to justify the presumption of its due execution, particularly as an actual possession of the premises had not followed the deed ; neither could such a presumption be raised from the fact that the deed was acknowledged and recorded. But while a presumption of that character will not be raised from those circumstances, they may have some weight in the proof that a contract for the conveyance of the premises was made, as well as of the particular provisions of that contract. We think the evidence in this case is sufficient to show not only that such a contract was made between Mr. Culver and the town of Colchester, but that a deed was executed in pursuance of that contract, a copy of which is found on the town records. The answers admit that a negotiation was had between these parties for the transfer of this land to the town of Colchester. It is true the defendants deny the contract as stated in the bill, and for that purpose it is not evidence, but so far as a negotiation was had as preliminary to the

9

execution of a deed of conveyance, it may be relied on as corroborating the testimony of Mr. Meares. The testimony of Mr. Meares is important on this question. He was the confidential and intimate friend of Mr. Culver. He states that the evening before the installation of Mr. Culver as the first settled minister of that town, a conversation was had in the presence of several persons, in which it was stated that an arrangement had been made by which Mr. Culver was to deed to the town of Colchester all the ministerial right in that town, except a certain lot near Malletts Bay. The terms of the deed on record we find correspond with that arrangement. Mr. Culver, he says, was present, and thinks he gave to that statement his assent, and is sure that he expressed no dissent. The installation of Mr. Culver was had in 1817 or 1818, and the deed as recorded purports to have been executed in 1821. During that period the witness states that he had several conversations with Mr. Culver in relation to the ministerial lands, that suits were threatened by Mr. Munson, and in those conversations he thinks Mr. Culver told him that he had conveyed all of the ministerial lands to the town of Colchester except the lot before mentioned. He may be mistaken as to the time when Mr. Culver stated that he had made the conveyance without affecting the credibility of his testimony that such a statement was made at some time. His advanced age may reasonably account for a mistake of that kind; and when we find on record a deed purporting to have been taken from some originals carrying into effect that arrangement, we can have no reasonable doubt that such an arrangement was made and perfected by the execution of such a deed as was testified to by Mr. Meares. In addition to this testimony it is admitted that lot No. 129 is a part of the ministerial lands in that town, and which by that arrangement was to be conveyed to the town of Colchester; and that as early as 1819 and 1821, before the death of Mr. Culver, a large quantity of pine timber was taken from that lot and paid for to the town. This was an act of ownership under that arrangement, and the silence of Mr. Culver in relation to that matter during his life is a recognition of their right. In 1838, after his decease, a perpetual lease of the same lot was executed by the selectmen of Colchester to Mr. Mills, and he and those under him have been in possession

of that lot to the present time. The acts of ownership and possession which have been exercised over this lot by the town, are evidence that an arrangement was made as testified to by Mr. Meares, and that it was conveyed by an instrument, a copy of which was placed on the town records. If such a deed was made, it included the lot in question, and that is now the only paper title which the town have to the lot leased by them to Mr. Mills. If the heirs of Mr. Culver were to make claim to that lot, no court could hesitate to correct the instrument on record and perfect in the town their title to that lot. If the evidence is sufficient to establish the deed to a part of the premises, it is to all. If Mr. Culver intended to execute a valid deed of that lot, he did of the lot described in the bill, for it was all included in the same arrangement and in the same defective deed.

The fact that no claim was made to this land by Mr. Culver after his installation, and that none has been made by his heirs for so long a period, is controlling evidence that they understood they had no claim to the land, and that it had, under that arrangement, been conveyed to the town of Colchester. The question now is not whether the town have lost their title to the land described in the bill by the adverse possession of other persons, as that is a matter to be tried at law, but whether the proof is sufficient that a valid deed was intended to have been executed by Mr. Culver conveying these premises to the town; if so, and the deed has been defectively executed, it should be corrected or the plaintiffs' title perfected as against Mr. Culver and those claiming under him, and the parties left to their legal remedies.

In relation to the consideration of that conveyance it is only necessary to observe that the deed specifies a consideration sufficient to cut off any resulting trust between the parties. It is rendered obvious also, that the conveyance of this ministerial right and the installation of Mr. Culver were all parts of the same arrangement, and that Mr. Culver was permitted to be clothed with the title of all these lands in consideration that the lands, with the exception of the lot near Malletts Bay, should be conveyed to the town of Colchester. If such was the arrangement, there is no propriety in saying that an instrument executed by him to carry that arrangement into effect shall not be made effectual

for that purpose, when for the want of a seal it is rendered ineffectual through an obvious mistake of his own. It is not for the defendants, who have paid nothing for the land and who have never made claim to it until shortly previous to the commencement of the suit at law, to interfere with the specific execution of that arrangement.

We think the facts stated in the bill are sufficiently proved by the testimony, and that the plaintiffs are entitled to a decree as prayed for in the bill. Decree of the chancellor reversed and case remanded with directions to grant the relief as stated in the prayer of the bill.