## TRUSTEES v. BRYSON.

1. MARITAL RIGHTS—WIFE'S EQUITY.—Under the law of this State prior to the changes effected by the constitution of 1868, the marital rights of the husband attached to the personal property of the wife so soon as he reduced it into his possession, but the wife's choses in action were not regarded as property in his possession until he collected them or reduced them to judgment; and if the husband invoked the aid of the Court of Equity to secure possession, he might be required to make a settlement on the wife, and therefore the court would sustain such a settlement voluntarily made as it would have ordered if applied to.

2. IBID.—IBID.—In 1862, a husband received his wife's inheritance in money from her father's administrator, and acknowledged its receipt as his wife's "share of her father's and mother's estate, which I do here bind myself to return to her to dispose of as she sees proper to do, without interest." *Held*, that this money never came into the possession of the husband as husband, and therefore his marital rights did not attach, but as trustee he received it as his wife's separate estate, and his subsequent conveyance to his wife of a tract of land, a small portion of his own estate, of less value than the amount so held by him for his wife, in payment of this debt, is valid in favor of the wife as against those who were creditors of the husband before he received the money, even though he afterwards proved to be insolvent.

3. IBID.—IBID.—At common law a husband and wife could not generally contract with each other, but equity would sustain such a settlement of the wife's property as was here made.

4. REGISTRY—SETTLEMENTS.—The marriage settlement act did not render a settlement void for want of registry, unless founded upon the consideration of marriage.

5. DEED—NO SEAL—EQUITY.—A paper based upon a valuable consideration, and in form a deed, except that the seal was omitted by accident, as clearly appears from the face of the paper itself, will be upheld according to its intention and regarded in equity as a sufficient deed.

6. HUSBAND'S POSSESSION OF WIFE'S LAND.—Where a husband remained in possession of a tract of land conveyed by him to his wife in 1862, his possession was consistent with the deed and furnished no badge of fraud.

26—34

Before NORTON, J., Laurens, February, 1890.

This was an action by the Trustees of the Wadsworthville Poor School. a body corporate, against W. H. Bryson and S. W. Bryson, as administrators of Samuel Bryson, deceased, and Tabitha Bryson and others, distributees of Samuel Bryson. The master's report was as follows :

This cause was referred to me to hear and determine the issues of law and fact involved, "and to report my findings to the court, with leave to report any special matter." This action is to have deeds made by Samuel Bryson in his life-time of all his real estate to his wife and sons declared void for fraud as to creditors, and to subject the said real estate to the payment of the indebtedness of the said Samuel Bryson.

It appears that on the 2nd January, 1846, Samuel Bryson and Matthew Bryson made their joint and several sealed note, whereby they, or either of them, covenanted under their hands and seals to pay, on the 1st January next after date, to Edmund Pasley, as treasurer of the Wadsworthville Poor School, or his successors in office, two hundred and forty-seven dollars and fifty-one cents, for value received of him, with interest from 1st January, 1846, to be paid annually. Numerous payments were made on this note and credited thereon, the last one having been made on the 20th of March, 1884.

That on the 28th of December, 1849, James Leaman and Samuel Bryson made their joint and several sealed note, whereby they, or either of them, covenanted under their hands and seals to pay, twelve months after date, to Edmund Pasley, as treasurer of the Wadsworthville Poor School, or his successors in office, two hundred and seventy-six dollars, for value received, with interest from date, to be paid annually. Several payments were made and credited on this note, the last one having been made on the 7th January, 1883.

That on the 10th of February, 1877, the said Samuel Bryson made, executed, and delivered to his sons, William H. and William W. Bryson, three separate deeds to three separate tracts of land, containing respectively one hundred and four acres, fifty-six acres, and twenty-four and three fourth acres, more or less,

the consideration expressed in said deeds respectively being seven hundred and fifty dollars, three hundred and ninety-two dollars, and one hundred and seventy-five dollars. These deeds were filed and recorded in the office of the register of mesne conveyance for said county, on the 31st January, 1879, and embraced all the land owned by the said Samuel Bryson, except one tract hereinafter mentioned.

That on the 16th day of June, 1862, the said Samuel Bryson made a receipt under his hand and seal, of which the following is a copy:

"Received of James McDowal, jr., administrator of the estate of James McDowal, sr., deceased, eleven hundred and five dollars, which was my wife, Tabitha Bryson's, share of her father and mother's estate, which I do here bind myself to return to her to dispose of as she sees proper to do, without interest. Given under my hand and seal this 16th day of June, 1862.

"(Signed)        SAMUEL BRYSON. [SEAL.]

"Witness: THOMAS McDOWAL,

"WILLIAM H. BRYSON."

That on the 15th December, 1879, the said Samuel Bryson signed, in the presence of two witnesses, a paper purporting to be a deed to his wife, Tabitha Bryson, for the only remaining tract of land in his possession and ownership after the conveyance aforesaid to his sons, the said tract containing one hundred and seventeen acres, more or less, and being worth some $6 or $8 an acre. The said paper begins as follows: "Whereas, on the 16th day of June, A. D. 1862, I, Samuel Bryson, under my hand and seal, acknowledged the receipt of eleven hundred and five dollars of James McDowal, jr., of the share of my wife in the estates of her father and mother, which by said receipt I agreed to return to be disposed of as she might choose. Now, in pursuance of said receipt and the agreement thereunder, and in consideration of the said sum of eleven hundred and five dollars, the said receipt being witnessed by W. H. Bryson and Thomas McDowal. Know all men by these presents, that I, Samuel Bryson, of said county, in consideration of the premises and one dollar to me in hand paid by Tabitha Bryson, my wife, as aforesaid, of said county, in the State aforesaid, have granted," &c. The signa-

ture of Samuel Bryson to this paper has no seal affixed to it, but it was filed and recorded in the office of the register of mesne conveyances for said county on the 12th January, 1880.

That the said Samuel Bryson continued to live on the said land with his wife, and "farmed the place," as the witnesses say, until his death, which occurred on the      day of February, 1885.

That the defendants, W. H. Bryson and S. W. Bryson, were duly appointed the administrators of the personal estate of Samuel Bryson, and on the 11th May, 1887, made a final accounting in the Court of Probate, when all creditors were called in to establish their claims, and amongst others the aforesaid notes were established as subsisting debts against the estate, and it was found by that court that there was then due on the note first mentioned above the sum of $521 88–100, and on the other note the sum of $468 48–100. That accounting developed the fact that the personal estate was altogether insufficient to pay debts, the administrators having applied all the money which came to their hands to the payment of a certain judgment against the estate, and their action in so doing was confirmed by the Probate Court, so that nothing was left for the claims herein sought to be collected and other claims established at that accounting. This action was commenced in May, 1888.

CONCLUSIONS OF LAW. As to the deeds made by Samuel Bryson to his sons. There is not sufficient proof to warrant the finding that they were made in fraud of the rights of creditors. They cannot therefore be declared void.

As to the paper made by him to his wife. It is claimed that the plaintiffs must have a *nulla bona* return upon an execution issued on their judgment obtained in the Probate Court, if the establishment of their claims there amounts to a judgment, which is questioned. Upon the showing made, I do not think that the question as to *nulla bona* return arises, or need be considered. For the attempted deed to Mrs. Bryson is practically and technically not a deed. It is fatally defective in its execution, having no seal affixed, and is therefore ineffectual to convey the fee to her. The fee, then, remained with Samuel Bryson, and at his death the land descended to his heirs at law, the defendants here, subject to his debts.

But it is argued that this was in fact a *bona fide* purchase by Mrs. Bryson of her husband with her patrimony from the estates of her father and mother, and that the paper may be regarded as an equitable assignment giving Mrs. Bryson a higher right to ask and require the other heirs at law of Samuel Bryson to make her a deed to the land, than creditors have to subject the land to the payment of debts.   That the husband's receipt in 1862 for the money paid to him by the administrator of McDowal, and his agreement therein set forth to return the money to Mrs. Bryson was a waiver of his marital rights, and had a right to do so at that time.   I don't think the position can be maintained.   While it may be true, as shown by the testimony, that Samuel Bryson owned in 1862 property amply sufficient to pay his indebtedness, and that he was then able to give this money, or property to the value of it, to his wife, without furnishing his creditors reason to complain, yet did not at that time give it to her, but bound himself to do so at some future time.   I think his marital rights did attach, and that at the time he attempted to make a voluntary conveyance of this land, in lieu of returning the money itself to his wife, he was not in a condition to do so.

It is said that this action is barred by the statute of limitations, because it was not commenced within six years from the accrual of the right of action.   But the right of action on the part of a creditor to subject lands descended to the payment of his debt is not barred short of ten years, provided his right of action on the debt itself is not barred.  Samuel Bryson died in February, 1885, and this action was commenced in May, 1888, a little over three years.  At the time of the execution of these sealed notes there was no statute of limitations applicable to such contracts, but they could only have been presumed paid by the lapse of twenty years.  This presumption did not arise, because payments were made on the notes almost every year down to 1883 and 1884.   Besides, they were established in the Probate Court in a proceeding to which these defendants were parties in May, 1887, about a year previous to the commencement of this action.   I do not see that the action is barred by the statute.

I recommend that the plaintiffs have the decree of this court directing a sale of the 117 acre tract of land, and the application

of the proceeds of sale to the expenses thereof, and the costs of these proceedings, and then to the plaintiffs' claims as established at the accounting in the Probate Court, with interest from that time, and to other claims as established at that accounting, with interest according to the rank of all said claims.

All objections to testimony inconsistent with the conclusions herein announced are overruled, otherwise they are sustained. My notes of testimony are herewith filed as a part of this report.

All of which is respectfully submitted.

C. D. BARKSDALE,

January 24th, 1890.                          Master L. C.

The case came up on exceptions, and the Circuit Judge by a formal order confirmed the master's report. The defendant, Tabitha Bryson, appealed on the following grounds:

I. Because it is respectfully submitted that the Circuit Judge erred in holding that it was not necessary for plaintiff to have a judgment and execution thereon, and a return of *nulla bona*, before it could maintain this action against the defendant.

II. Because he erred in holding that the claims of plaintiff were established against the estate of Samuel Bryson in the accounting had in the Probate Court.

III. Because he erred in holding that the marital rights of Samuel Bryson attached to the money paid to him by James McDowell, jr., and for that reason the promise on the part of the said Samuel Bryson to pay said money to the defendant was without consideration.

IV. Because he erred in not holding that the paper given by Samuel Bryson to the defendant when he received the money that she was entitled to from her father's estate, was such a promise as would be enforced by a Court of Equity, and as made her his creditor.

V. Because he erred in not holding that Samuel Bryson had a right to prefer the defendant to the balance of his creditors, and that the paper executed by him to her with the view of conveying the tract of land therein described amounted to an equitable assignment or mortgage, and will be sustained in equity.

VI. Because he erred in not holding that it was the intention

of Samuel Bryson to convey the fee in the said tract of land to the defendant, and that in equity it did pass to her, notwithstanding the fact that there was no seal put to the deed. And in not ordering a seal put to the same, so as to crrry out the intention of the parties.

VII. Because he erred in not holding that the arrangement entered into by Samuel Bryson, James McDowal, jr., and the defendant amounted to a settlement upon the defendant, such as a Court of Equity would have made if called upon.

VIII. Because he erred in not holding that plaintiff's claims have been paid.

IX. Because he erred in not holding that plaintiff's action is barred by the statute of limitations.

X. Because he erred in holding that Samuel Bryson died seized and possessed of the said tract of land, and in ordering it sold for the payment of his debts.

XI. Because he erred in holding that Samuel Bryson was insolvent at the time he conveyed the land to defendant.

*Messrs. Ferguson & Featherstone,* for appellant.

*Messrs. N. W. Harris* and *L. W. Simkins,* contra.

September 14, 1891. The opinion of the court was delivered by

MR. JUSTICE McIVER. The plaintiffs bring this action, in the nature of a creditor's bill, against the administrators and heirs at law of Samuel Bryson, deceased, to subject certain real estate, originally belonging to the intestate, to the payment of their debts. It appears that the intestate executed two notes under seal, payable to the treasurer of plaintiffs, one dated 2nd January, 1846, and payable on the first of January following, and the other dated 28th December, 1849, and payable twelve months after its date, and that upon each of these notes numerous payments are credited—on the first note the payments beginning in 1847 and the last bearing date 20th March, 1884, and on the other the first payment being credited 5th January, 1852, and the last 7th January, 1883, there not being an interval of twenty

years between any of the credits endorsed upon either of the notes. On the 16th of June, 1862, the intestate, Samuel Bryson, received from the administrator of his wife's father the sum of $1,105, when he executed, under his hand and seal, in the presence of two subscribing witnesses, a paper of which the following is a copy: "Received of James McDowell, jr., administrator of the estate of James McDowell, sr., deceased, eleven hundred and five dollars, which was my wife, Tabitha Bryson's, share of her father and mother's estate, which I do here bind myself to return to her to dispose of as she sees proper to do, without interest. Given under my hand and seal this 16th day of June, 1862.

                                "SAMUEL BRYSON, [SEAL.]
  "Witness: THOMAS McDOWELL,
          "WILLIAM H. BRYSON."

On the 10th of February, 1877, the said Samuel Bryson executed three deeds to his sons, defendants herein, for three separate tracts of land, containing respectively 104 acres, 56 acres, and 24¾ acres, the consideration expressed in said deeds respectively being $750, $392, and $175. These deeds were recorded on the 31st January, 1879. On the 15th December, 1879, he signed a paper purporting to be a deed, in the presence of two subscribing witnesses, conveying to his wife Tabitha his only remaining tract of land, containing about one hundred and seventeen acres, the value of which seems to have been from $6 to $8 per acre. This paper begins with a recital of the terms of the receipt and agreement of the 16th of June, 1862, hereinabove copied, and proceeds in these words: "Now, in pursuance of said receipt and the agreement thereunder, and in consideration of the said sum of eleven hundred and five dollars, the said receipt being witnessed by W. H. Bryson and Thomas McDowell. Know all men by these presents that I, Samuel Bryson, of said county and State, in consideration of the premises, and one dollar to me in hand paid by Tabitha Bryson, my wife as aforesaid, of said county in the State aforesaid, have granted," &c., following the usual form of an ordinary deed, and containing the words, "Witness my hand and *seal*," and the words, "Signed, *sealed*, and delivered in the presence of" the two subscribing witnesses; but it contains no seal opposite the name of the said Samuel

Bryson. The usual probate was endorsed, in which in the ordinary form one of the subscribing witnesses deposes "that he saw the within named Samuel Bryson sign, *seal*, and as his act deliver the within written deed; and that he, with W. R. Crisp (the other subscribing witness), witnessed the execution thereof." This being sworn to before the clerk of the court, the paper was spread upon the records of the office of the register of mesne conveyances on the 12th of January, 1880.

Some time in February, 1885, Samuel Bryson died intestate, and administration of his personal estate was duly committed to the two defendants hereinabove named as his administrators, who made a final accounting in the Probate Court on the 11th of May, 1887, to which all the parties to the present case, except perhaps the grandchild of intestate, Mattie Young, were parties, when the plaintiff's claims were established and the amount due thereon ascertained. From this accounting it appears that the personal estate of intestate was wholly insufficient for the payment of his debts, the whole amount thereof being applied to a judgment, leaving nothing applicable to the payment of the claims of plaintiffs; and in May, 1888, this action was commenced for the purpose of subjecting the several tracts of land conveyed by the intestate to his two sons and his wife to the payment of said claims, upon the allegations that these conveyances were voluntary and in fraud of the rights of creditors. The defendants answered, setting up several defences, which need not be fully stated here, as they will sufficiently appear in the progress of the discussion.

The issues, both of law and fact, were referred to the master, who, after hearing the testimony set out in the "Case," made his report, which should be incorporated in the report of the case, wherein he found that there was no sufficient proof to warrant the finding that the deeds to the two sons were made in fraud of the rights of creditors, and they could not therefore be declared void; but that the attempted conveyance to the wife failed for want of a seal, and the marital rights of the husband having attached upon the money received by the intestate from the administrator of her father's estate, and he being insolvent at the time, his attempt to convey the land to his wife by a voluntary deed could

not be upheld in equity, and having overruled the plea of the statute of limitations, as well as the plea of payment, together with the defence set up that plaintiffs could not maintain this action without showing a return of *nulla bona* on an execution issued to enforce their claims, recommended that plaintiffs have judgment for the sale of the 117 acre tract of land, and the application of the proceeds thereof, after providing for the costs and expenses of the case, to the claims established according to their rank.

To this report the defendant, Tabitha Bryson, filed numerous exceptions, set out in the "Case," and the case being heard by his honor, Judge Norton, upon this report and the exceptions thereto, he rendered judgment overruling all the exceptions and confirming the master's report. which he made the decree of the court. From this judgment defendant, Tabitha Bryson, appeals upon the several grounds set out in the record, the material points of which we will proceed to consider. Inasmuch as there was no finding of any actual or intentional fraud, and we may add, no evidence which would warrant such a finding, the judgment appealed from must be considered as resting upon constructive fraud only, arising from a voluntary conveyance made by a person in insolvent circumstances, whereby the claims of his creditors were defeated. Those of the grounds of appeal which make the questions as to the necessity for a return of *nulla bona ;* as to the sufficiency of the evidence to establish plaintiff's claims; as to the plea of payment; and as to the statute of limitations, while not distinctly abandoned, were not pressed in the argument here, and as they manifestly cannot be sustained, need not be further considered.

The real question is as to the nature and effect of the paper purporting to be a conveyance of the tract of land in question to the appellant, Tabitha Bryson, by the intestate, Samuel Bryson; and this depends largely upon the question whether the marital rights of the intestate ever attached upon the money received by him from the administrator of his wife's deceased father, under the receipt and agreement of 16th of June, 1862, a copy of which is set out above. This transaction having occurred prior to the adoption of the constitution of 1868, whereby such radical

changes were effected in the relations of husband and wife in relation to the property of the latter, must be viewed in the light of the law as it stood prior to the adoption of the present constitution. Under that law it was well settled that the husband acquired by the marriage the absolute legal title to all of his wife's personal property so soon as the same was reduced to possession by him; but there was much conflict of opinion as to what would amount to such a reduction into possession as would invest the husband with a legal title. See *Verdier* v. *Hyrne* (4 Strob., 463), where the authorities were elaborately reviewed. It was, however, universally conceded that the marital rights did not attach upon the wife's choses in action until actually collected, or reduced to judgment in favor of the husband. Hence where the wife became entitled to a legacy in the hands of an executor or to a distributive share of a deceased ancestor's estate in the hands of an administrator, the marital rights would not have attached upon such legacy or distributive share, even where a decree had been obtained, unless there was an order of payment to the husband. *Muse* v. *Edgerton*, Dud. Eq., 179; *Reese* v. *Holmes*, 5 Rich. Eq., 531.

It is clear, therefore, that the share of appellant in the estate of her deceased father while in the hands of his administrator, being a mere chose in action, the marital rights of her husband, the intestate, could not have attached thereon until he reduced the same into possession. Now, upon familiar principles, if he had invoked the aid of a Court of Equity in enforcing payment by the administrator of this distributive share of his wife, that court might and probably would have required a settlement upon her of the fund sought to be obtained by the husband. Clancy on Women, 441–443; *Heath* v. *Heath*, 2 Hill Ch., 104. As is said in *Bouknight* v. *Epting*, 11 S. C., at page 77, "The rule on the subject of the wife's equity to a settlement is, that whenever the wife's property is under the jurisdiction of the Court of Chancery, in such a manner that it requires a decree or order of the court to put a party rightfully into possession of it, the court will not deliver it over except upon terms of a settlement being made, unless the wife has been sufficiently provided for out of other property, or unless the wife upon a private examination

shall waive her right to such settlement"—citing the authorities.
Now, if the court would have ordered a settlement upon the wife
in this case, if applied to for that purpose, it will undoubtedly
sanction and sustain a settlement voluntarily made by the parties.
Clancy on Women, page 446; *Perryclear* v. *Jacobs*, 2 Hill Ch.,
504; *Ryan* v. *Bull*, 3 Strob. Eq., 91.

These principles being settled, our next inquiry is whether the
receipt and agreement of the 16th of June, 1862, set out above
can be regarded as a settlement of the principal sum of
the amount received by the husband from the administra-
tor as the distributive share of his wife in her deceased
father's estate. While it is undoubtedly true that if the husband
had received this money from the administrator unconditionally
and without any qualification, his marital rights would have at-
tached and the money would have become absolutely his, without
any liability on his part to account to her for the same, and there-
fore he could not have given his wife the money or property
bought with it, to the prejudice of his creditors; yet, as is said
in *Jackson* v. *McAliley* (Speer Eq., at page 307), "In order that
the marital rights may attach, at all events in this court, it is
necessary that the husband should take possession as husband,
and as of his own property, and not as trustee." To the same
effect see *Higginbottom* v. *Peyton*, 3 Rich Eq., 398; *Medsker*
v. *Bonebrake*, 108 U. S., 66.

The fact, therefore, which is undisputed, that the husband did
actually receive this money from the administrator of his wife's
deceased father, is not conclusive; but the inquiry still remains
whether he received it as his own or as trustee for his wife. This
depends largely upon the intention of the husband, as expressed
at the time. 2 Perry Trusts, § 639; *McCampbell* v. *McCamp-
bell*, 2 Lea, 661, s. c., 31 Am. Rep., 623. If, when he received
the money, he declared that he did so simply as the agent of his
wife, and assumed an obligation to repay it to her, this would
negative any intention to receive or hold it by virtue of his mari-
tal rights, and a Court of Equity will hold him to his declared
intention; for it might be that the administrator would have
refused to pay him but for such declared intention, in which case

he would have had to invoke the aid of the court, when a settlement would have been required.

Now, in this case the terms of the receipt and agreement leave no doubt as to his intention at the time; for in it he says, not only that the money is his wife's share of her deceased father's estate, but he adds, "which I do hereby bind myself to return to her to dispose of as she sees proper to do, without interest." This completely negatives the idea that he received the money by virtue of his marital rights as husband, and, on the contrary, clearly recognizes his liability to account to his wife for the same. Practically this paper made him a trustee for his wife, so far as this money was concerned. It is true that the paper was informal, but it is well settled that no particular form is essential to the creation of a separate estate in a married woman. As is said in 3 Pom. Eq. Jur., § 1102: "No particular form of words is necessary in order to vest property in a married woman for her separate use, and thus to create a separate estate." It is a question of intent. *Charles* v. *Coker*, 2 S. C., 133. The paper containing an obligation on the part of the husband to return the money to the wife *"to dispose of as she sees proper to do,"* sufficiently shows an intent to create a separate estate in the wife. *Wilson* v. *Bailer*, 3 Strob. Eq., 258; *Ellis* v. *Woods*, 9 Rich. Eq., 19. The fact that no person is named as trustee is of no consequence, for in such a case a Court of Equity will regard the husband as trustee. See 3 Pom. Eq. Jur., § 1100, where the *rationale* of this rule is fully and clearly explained. See also *Boykin* v. *Ciples*. 2 Hill Ch., 200.

It seems to us that the case now under consideration cannot be distinguished in principle from that of *Banks* v. *Brown*, 2 Hill Ch., 558. There a husband, being in debt at the time, by a deed expressed to be in consideration of love and affection, settled property, both real and personal, upon his wife. He was at that time negotiating a sale of a large estate which he had acquired by the marriage, which sale was subsequently effected, and the real inducement for the renunciation of the wife's inheritance in the real estate sold, was the deed of settlement first mentioned. Upon a bill filed by the creditors of the husband to set aside the deed of settlement as voluntary, it was held that

parol evidence was admissible to show that the real consideration of the deed of settlement, which on its face appeared to be voluntary, was the renunciation by the wife of her inheritance in the real estate subsequently sold by her husband, and that such consideration was sufficient to support the deed of settlement against the creditors of the husband. This case, therefore, is stronger than that, for here the valuable consideration of the conveyance to the wife. which plaintiffs now seek to set aside—the wife's distributive share of her father's estate received by the husband from the administrator of her father—is stated in the deed itself, while there the only consideration stated in the deed was love and affection, and the valuable consideration—the renunciation of the wife's inheritance in the real estate sold by the husband—was allowed to be proved by parol evidence. Here also the consideration was received by the husband *before* the execution of the deed to the wife, while there the valuable consideration did not enure to the husband until *after* the execution of the deed of settlement upon the wife. In this case the husband received the wife's money under a promise to return it to her to be disposed of by her as she might think proper, and if she chose to receive it in the shape of land instead of money, as she did, we do not see why this would not constitute just as valid a consideration for the deed to her as the renunciation of the wife's inheritance in the case of *Banks* v. *Brown*, 2 Hill Ch., 558, *supra*.

It is contended, however, that this promise on the part of the husband to return the money to his wife was a mere nullity, on account of their marital relations, husband and wife being incapable of contracting with each other. It is true that according to the principles of the common law such incapacity did exist; but a Court of Equity would, under certain circumstances, recognize and uphold such a contract. 2 Story Eq. Jur., § 1372, *et seq*. As is said in section 1377a: "If a husband should voluntarily enter into a contract to make a settlement, or should actually make a settlement upon his wife and children, in consideration of personal property coming by distribution or bequest from her relatives, to no greater extent than what a Court of Equity would, upon a suitable application by bill, direct him to make; in such a case the post-nuptial con-

tract or settlement will not only be held valid and obligatory upon him and his representatives, but equally so against his creditors."

This case falls within the principle thus stated by this eminent author; for here the money came to the husband as the distributive share of his wife in the estate of her deceased father, and he received it under a promise to return it to her to be disposed of as she might think fit; thus negativing the idea that he took it by virtue of his marital rights, and plainly recognizing her right to it, as well as her absolute dominion over it. The amount was about one-tenth of the value of the property then owned by him, and it cannot be doubted that a Court of Equity, if appealed to, would have made just such a settlement as was practically made by the husband voluntarily. The fact that in the event the husband proved to be insolvent cannot affect the question, for there was in fact a valuable consideration for the deed to the wife, and there is no valid pretence that any actual fraud was intended. The manifest object was simply to secure to the wife her money, which had been received by the husband under a promise to return it to her, and the conveyance of the land, which the testimony shows was less in value than the amount received, cannot in any aspect be regarded as a fraud upon his creditors. *Taylor v. Heriot*, 4 DeSaus., 227. The debts due plaintiffs were contracted long before the money was received, and therefore it cannot be said that the husband obtained credit on the faith of this money being his.

If it should be said that this attempted conveyance by the husband to the wife, being at most a post-nuptial settlement, is void for want of registry in the office of secretary of state, inasmuch as it rested upon the receipt and agreement of 16th of June, 1862, executed prior to the change in the registry law, the answer is found in the case of *Banks v. Brown, supra*, where it is shown that the terms of the marriage settlement act apply only to settlements founded upon the consideration of marriage; and could not therefore directly apply to settlements entered into after the marriage, unless made in pursuance of articles previously entered into. This case practically overrules the case of *Price* v. *White* (Bail. Eq., 244), so far as

this point is concerned. See the reporter's note to *Price* v. *White* at page 247 of the last edition of Bailey's Equity Reports.

But it is contended that the paper purporting to be a conveyance of the land in question to the appellant lacks a seal, and therefore could not operate as a transfer of the legal title; that at most the appellant has only an equity which must yield to the alleged superior equity of the plaintiffs. It will be observed that the terms of the paper itself show conclusively that it was not intended as a mere agreement to convey, but as an actual conveyance. It has all the essential elements of a conveyance of real estate, except the seal, and its omission was clearly accidental and certainly not intentional. It concludes with the words, "witness my hand and *seal*," and purports to have been "signed, *sealed,* and delivered" in the presence of two subscribing witnesses, one of whom goes before the proper officer and makes affidavit that he saw the grantor "sign, *seal*, and as his act and deed deliver the within written *deed*," and the paper is spread upon the records of the proper office as a deed. So that there cannot be a doubt that the intention was to execute a formal deed, and the parties as well as the witnesses, together with the recording officer, manifestly supposed that the paper was what it was intended to be—a valid deed. This being the case, a Court of Equity will regard the paper as a deed, and will supply this accidental omission of the seal. 1 Pom. Eq. Jur., § 383; *Wadsworth* v. *Wendell*, 5 Johns. Ch., 224; *Bernard's Township* v. *Stebbins*, 109 U. S., 341; *Pope* v. *Montgomery*, 24 S. C., 595.

Finally, it is urged that the retention of the possession of the land, which Samuel Bryson undertook to convey to his wife, up to the time of his death, is sufficient to establish the fraudulent character of such attempted conveyance; but as was said by DeSaussure, Ch., in *Taylor* v. *Heriot*, 4 DeSaus., at page 234: "It was consistent with the deed and with the nature of the connexion between the husband and wife, and therefore does not furnish that evidence of fraud which possession retained by the person conveying usually does." See also *Pregnall* v. *Miller*, 21 S. C., 385, and the cases therein reviewed.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.